**UNITED STATES of America,
Appellant,**

v.

**Ronald Paul BROWN, Appellee.
No. 72–1601.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1973.

Decided July 25, 1973.

Sheryle L. Randol, Asst. U. S. Atty., Kansas City, Mo., for appellant.

David R. Freeman, Federal Public Defender, Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY, Circuit Judge, and VAN SICKLE, District Judge.[*]

[*] Sitting by designation.

VAN OOSTERHOUT, Senior Circuit Judge.

This is a timely appeal by the Government from final order dated September 25, 1972,[1] dismissing an indictment against the defendant Brown charging him with bail jumping in violation of 18 U.S.C. § 3150.

Defendant had entered a plea of guilty to a Dyer Act charge. Date for sentencing remained indefinite pending a report by the probation office. Defendant was released on his own recognizance which required him to appear at all scheduled hearings and prohibited him from leaving the Western District of Missouri. He gave his address at which he could be reached as R.R. 4, Warrensburg, Missouri—his father's home. A certified letter notifying him to appear on June 16 for sentencing was sent to defendant at the above address. Such letter was returned unopened. Similar notification was sent to defendant at Box 122, Centerview, Missouri, the address of his estranged wife, which was receipted for by his wife on June 14 and opened by her.

Defendant concedes that such letter was given to him by his wife on June 18, the first time defendant appeared at his wife's home during the relevant period. Defendant had not given his attorney or any court official any change of address or instructions where to reach him prior to the mailing of the notice. His attorney's efforts to reach him by phone were unsuccessful.

After receiving the notice of the June 16 hearing from his wife on June 18, defendant made no effort to contact his attorney or court officials. On June 20 defendant was contacted while incarcerated in a Burlington, Colorado, jail by FBI Agent Bunch. He was given the Miranda warnings after which he voluntarily stated inter alia that he knew his failure to appear for sentencing would be considered a bond default which would result in additional charges. He stated that he panicked upon learning he had missed his sentencing appearance and fled the State of Missouri and headed for Denver to visit his sister. He admitted that he gave his father's Warrensburg address as a place where he could be reached.

On July 7 defendant appeared before the court for arraignment on the bail jumping charge with his counsel. After his rights were fully explained to him by the court, he entered a voluntary plea of guilty to the indictment. The transcript of the Rule 11 proceeding reveals that the court was uncertain whether the willful element of the offense was established. The court accepted the plea conditionally, stating:

" * * * I will simply require the United States Attorney's office to prepare, file and serve within a week an appropriate statement of what the facts are, together with a brief in support, and opposing counsel shall have five days thereafter to file a brief in opposition. If I determine that there is not sufficient evidence, I will simply set the plea aside, . . . ."

On July 14 the Government filed a response to the court's order requiring it to supply additional information which sets out additional facts and exhibits. Defendant on July 24 filed a motion to require the Government to produce additional evidence of his guilt or in the alternative, for leave to withdraw plea of guilty and for a dismissal. The Government on July 26 filed a motion acquiescing in defendant's motion for leave to withdraw guilty plea. The Government requested that the case be docketed for trial.

The court by order of July 27 sustained defendant's motion for disclosure of additional evidence. All other pending motions were denied. The Government on August 8 filed response to the July 27 order, naming particular witnesses and giving a synopsis of their anticipated testimony. The Government further stated that they would produce

---

1. All dates are in 1972 unless otherwise indicated.

evidence that the defendant was in Virginia during the first part of June and that he left there on June 3 with an automobile illegally obtained and was possibly accompanied by a female; that the automobile and the female thus far have not been located and that the search therefore is continuing "and it is the Government's belief that she does have information regarding defendant's whereabouts on dates in question and may be able to testify to his announced intention to avoid his court appearance, and evade capture. Further, it is our position that the Government has a right to pursue its investigation until the time of trial and that investigation is continuing."

The pleading concludes as follows:

"This is not a stipulation of fact nor does the United States consent to have this information treated as such. The United States furnishes the above information in compliance with Court Order but it reserves to itself objection to these proceedings, and respectfully requests the Court to accept defendant's guilty plea as tendered or allow him to withdraw his plea and docket this case for trial."

On August 22 the court filed an additional order stating that the August 8 response does not adequately set out what factual circumstances are under investigation. The court challenges the Government's statement that it has a right to pursue its continuing investigation up to the time of the trial. The court then states:

"The question of whether there is a factual basis for a guilty plea under Rule 11 and the question of whether the government will be able to adduce sufficient evidence to get to the jury is essentially the same question. In order that this question may be put in proper focus, it is, accordingly,

\*  \*  \*  \*  \*  \*

"ORDERED that the government state what additional investigation is being pursued so that a determination may be made as to whether the evidence being sought, when considered with the evidence already outlined in the stipulation of the parties and in the government's response of August 8, 1972, may be sufficient to establish a factual basis for the acceptance of the defendant's plea of guilty."

The Government on September 5 responded that it has attempted to fully comply with the prior orders of the court and that it is still looking for the female referred to in its prior response for the purpose of seeking the information there indicated, and concludes as follows:

"The Government is not willing to consent to submission of the case to the Court on stipulation and will not consent to the waiver of trial by jury and reiterates its request that the case be forthwith retransferred to Division 3 for early trial or that this Court accept defendant's tendered plea."

The final order entered on September 25 which gives rise to this appeal reads in pertinent part:

"The defendant in this case has always indicated a willingness to enter a plea of guilty. The difficulty has always been whether it can fairly be said that a factual basis for such a plea actually exists.

\*  \*  \*  \*  \*  \*

The refusal of the government to comply with the repeated order of this Court forces the Court into a position not dissimilar from that which the government forced Judge Will under the circumstances involved in Will v. United States, 389 U.S. 90 [88 S.Ct. 269, 19 L.Ed.2d 305] (1967).

"Judge Will directed the government to furnish particular information and indicated that he would dismiss the indictment if the government refused to comply. The government sought and obtained a mandamus in the Seventh Circuit. The Supreme Court reversed. The case makes clear that the Federal Rules of Criminal Procedure do not place limitations

upon the power of the Court to direct appropriate proceedings in order to keep current with an ever increasing docket.

"Under the circumstances of this case, it is

"ORDERED that the indictment should be and the same is hereby dismissed."

Defendant has filed a motion to dismiss this appeal upon the ground that the order appealed from was in effect an acquittal of the defendant and that 18 U.S.C. § 3731 denies the Government the right to appeal from the judgment. Such motion is submitted with the appeal on the merits.

The Government seeks reversal on the ground that the dismissal of the indictment without the Government's consent was beyond the power and authority of the court. Defendant argues that the dismissal by the court below was proper and that, regardless of its propriety, this court is without jurisdiction to hear this appeal. These two questions are closely intertwined.

Defendant's jurisdictional argument is focused on the appellate jurisdiction conferred by 18 U.S.C. § 3731. It is clear that if this court has jurisdiction to hear this appeal it is derived from § 3731.

As recently amended by the Omnibus Crime Control Act of 1970 (P.L. 91–644, tit. III, § 14(a), 84 Stat. 1890), § 3731 provides in part as follows:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."

\*　　\*　　\*　　\*　　\*　　\*

"The provisions of this section shall be liberally construed to effectuate its purposes."

The amendment applies to criminal cases begun after January 1, 1971, and thus controls this case. Defendant contends that the dismissal in this case was tantamount to an acquittal and that, as such, jeopardy "attaches" prohibiting further prosecution. Defendant thus seeks to bring himself within the exception to the general rule of § 3731. Unfortunately, no cases have been cited or found which seek to explore the meaning of § 3731 as amended.

In reference to the pre-amendment version of § 3731, the Supreme Court made the following observations:

"The Solicitor General, at oral argument in this case, forthrightly stated that 'there are few problems which occur so frequently or present such extreme technical difficulty in the Solicitor General's office [as] in the proper construction of the Criminal Appeals Act.' We share his dissatisfaction with this statute. Nevertheless, until such time as Congress decides to amend the statute, this Court must abide by the limitations imposed by this awkward and ancient Act." United States v. Sisson, 399 U.S. 267, 308, 90 S.Ct. 2117, 2139. 26 L.Ed.2d 608 (1970) (footnote omitted).

It is clear that the 1970 amendment was passed in part for the purpose of abolishing these "[t]echnical distinctions in pleadings as limitations on appeals by the United States." 1970 U.S. Code Cong. & Adm.News p. 5848. As the above-quoted phrase suggests, however, the elimination of these technical distinctions also greatly broadens the right of appeal by the government. The government is now "authorized to appeal any decision or order terminating a prosecution except an acquittal." Id. Thus the amended version of § 3731 is drastically different from the pre-amendment version in both scope and clarity. The difference is so great that most of the pre-amendment cases interpreting the section are now obsolete.

In United States v. Apex Dist. Co., 270 F.2d 747, 755 (9th Cir. 1959), for

example, the court held that "the Government may appeal [under § 3731] from a decision or judgment 'setting aside or dismissing' an indictment only if such decision or judgment is based upon a defect in the indictment or in the institution of the prosecution." Thus a dismissal because the United States refused to comply with pretrial discovery orders was held not appealable. The plain language of the amended version of § 3731 now clearly overrules such cases. See United States v. DiStefano, 464 F.2d 845, 846–848 & nn. 2–7 (2d Cir. 1972).

■ We hold that the amended statute now means precisely what it says: Where a district court dismisses an indictment or information, the Government is entitled to an appeal. The sole exception to this broad right of appeal is that no appeal shall lie where the double jeopardy clause prohibits further prosecution. It is this sole exception which is invoked by defendant. If it is inapplicable, then this court's jurisdiction to hear this appeal is, thanks to the amendment of § 3731, very clear.

It appears to us from a careful reading of the entire record that the September 25 order appealed from, hereinabove quoted, bases the dismissal upon the Government's failure to supply the court with the additional information it required in order to pass upon the question of whether the guilty plea should be accepted. Such view is supported by the trial court's reliance on Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L. Ed.2d 305 (1967), and particularly on the statement in the order reading, "Judge Will directed the government to furnish particular information and indicated that he would dismiss the indictment if the government refused to comply."

A dismissal based on failure of the Government to make the disclosures required by the court in connection with the Rule 11 hearing on the plea of guilty appears to be clearly appealable under § 3731 as amended.

Nevertheless, defendant seeks to characterize this dismissal as a Rule 12 pretrial sufficiency-of-the-evidence determination to which jeopardy attaches thus preventing appeal under § 3731. While, as previously indicated, we strongly disagree that this is an accurate characterization, we will briefly address this contention on its merits. Assuming arguendo that this order of dismissal constitutes a pretrial sufficiency-of-the-evidence determination, for the reasons which follow we hold that jeopardy does not attach, the order is appealable, and the dismissal was erroneous.

■ A preliminary inquiry concerns the question of when double jeopardy attaches. The general rule is clear: in a jury case, jeopardy attaches when the jury is impaneled and sworn. See, e.g., Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Newman v. United States, 133 U.S.App. D.C. 271, 410 F.2d 259 (1969); Alexander v. Fogliani, 375 F.2d 733 (9th Cir. 1967). This rule like most other rules, however, is not without important exceptions. Thus, even after the jury has been sworn, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). See also Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

■■ In dealing with the question of the circumstances in which retrial is to be precluded "when the initial proceedings are aborted prior to verdict," the Supreme "Court has, for the most part, explicitly declined the invitation of litigants to formulate rules based on categories of circumstances which will permit or preclude retrial." United States v. Jorn, 400 U.S. 470, 480, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971). Whether jeopardy attaches is based on flexible policy considerations rather than hard and fast rules: "[T]he conclusion that 'jeopardy attaches' . . . expresses a 'judgment that the constitutional poli-

cies underpinning the Fifth Amendment's guarantees are implicated. . . ." United States v. Jorn, supra, at 480, 91 S.Ct. at 555. Broadly stated, the policy underlying the double jeopardy provision "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States, 355 U. S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), cited in United States v. Jorn, supra, 400 U.S. at 479, 91 S.Ct. at 554.

There are cases, such as United States v. Ponto, 454 F.2d 647, aff'd on rehearing en banc, 454 F.2d 657 (7th Cir. 1971), which hold that jeopardy can attach prior to trial. *Ponto* is distinguishable in a number of respects. It was decided before § 3731 was amended. Additionally, the court there determined as a matter of law prior to trial that a defense was conclusively established. This procedure is specifically authorized by Rule 12 in cases where a defense on the merits is "capable of determination without trial of the general issue." There is no authority under Rule 12, however, to dismiss on the basis of a sufficiency-of-the-evidence defense which raises factual questions embraced in the general issue. *See,* e.g., United States v. Konx, 396 U.S. 77, 83 n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); Universal Milk Bottle Service v. United States, 188 F.2d 959, 962 (6th Cir. 1951); United States v. Treadway, 312 F.Supp. 307 (E.D.Va.1970); United States v. Callahan, 300 F.Supp. 519, 523 (S.D.N.Y.1969); United States v. Averell, 296 F.Supp. 1004, 1022 (E.D.N.Y. 1969). *See also* C. Wright, Federal Practice and Procedure §§ 193–194 (1969 & 1973 Supp.).

In our present case, the full evidence on the issue of willfulness was not before the court. Also it seems clear in the present case that the only matter pending before the court was the issue of whether to accept defendant's plea of guilty. Finally, to the extent that the double jeopardy aspects of *Ponto* are not distinguishable, we prefer the view of the four dissenting judges in that case.

■ We find no basis in the present case for departing from the general rule on double jeopardy heretofore set out on the factual situation here confronting us. The Government has never consented to a trial without a jury. The court in its various orders makes no mention that it is trying the case on the merits, and on the contrary the record as a whole fairly indicates that the only issue before the court was whether or not to accept defendant's plea of guilty. We hold that jeopardy has not attached and that the trial court's order of dismissal is appealable to this court.

■ Defendant contends that Rule 11, Fed.R.Crim.P.,[2] impliedly confers power upon the court to dismiss the indictment for failure of the Government to disclose its evidence. We do not agree. We find nothing in Rule 11 placing any burden upon the Government to disclose its evidence in detail, nor do we find any case support for defendant's position. The Rules Advisory Committee in its note to Rule 11 as amended in 1966 states: "The normal consequence of a determination that there is not a factual basis for the plea would be for the court to set aside the plea and enter a plea of not guilty." 8 Moore's Federal Practice—Cipes, Criminal Rules ¶ 11.-01[3].

The Government has an obvious interest in securing acceptance of a plea of guilty and thus avoiding a trial. A refusal by the court to accept a plea of guilty by reason of the failure of the Government to make a detailed disclosure should be an adequate sanction,

---

2. Rules cited herein are Federal Rules of Criminal Procedure unless otherwise indicated.

particularly where, as here, the Government has gone as far as it reasonably could in supplying information in its possession, and has persistently urged that it is diligently pursuing further investigation.

■ We note that the repeated hearings, pleadings and orders here involved have in all probability consumed more time on the part of the court and counsel than would be consumed in the trial of this relatively simple case. The final disposition of the case has been materially delayed. If the court in a Rule 11 proceeding cannot satisfy itself that there is a factual basis for the plea, the appropriate procedure is to refuse to accept the plea and go on with the trial of the case.[3]

˙ Defendant contends that the court properly determined on the merits that the Government's evidence was insufficient to support a conviction. We do not agree. The District Court states that "the question of whether there is a factual basis for a guilty plea under Rule 11 and the question of whether the Government will be able to adduce sufficient evidence to get to the jury is essentially the same question."

We may assume without so deciding that such statement is accurate. The record discloses that the court expressed the view that it was unable to determine whether to accept the guilty plea without additional information. The court does not expressly determine whether there was a factual basis for the plea. The court makes no express or implied finding that the Government could not supply sufficient evidence to support a conviction. Nor is there any express statement that the case had been submitted to the court on the merits. On the contrary, it appears quite clearly that the only issue before the court was whether or not to accept the guilty plea. As previously pointed out, the Government has consistently and vigorously maintained that all stipulations and evidence submitted were limited to the Rule 11 proceeding; that it consented to withdrawal of the guilty plea; that it insisted upon its right to a trial by jury under Rule 23, and that it was still continuing an investigation and would have additional evidence to offer at the trial.

■■ Rule 29 authorizes a judgment of acquittal after the evidence of either side is closed if the evidence is insufficient to sustain a conviction. The trial on the merits has not been reached in this case. The Rules of Criminal Procedure contain no provision for summary judgment. If we assume, without so deciding, that the court has inherent power to grant a summary judgment, such action is inappropriate here where the Government insists it will be able to produce additional evidence on a material issue of fact which would support a conviction. No basis exists under Rule 12 or Rule 29, or any other rule, for the dismissal here made. We find no authority which supports the recognition of any implied or inherent authority to dismiss the indictment under the facts of this case.

Another consideration which suggests that the power here in question should not be implied or regarded as inherent is the doctrine of separation of powers. This doctrine was discussed by Chief Justice (then Judge) Burger in Newman v. United States, 127 U.S.App.D.C. 263, 382 F.2d 479 (1967). In *Newman* the following language appears:

"An attorney for the United States, as any other attorney, however, appears in a dual role. He is at once an officer of the court and the agent and attorney for a client; in the first capacity he is responsible to the Court for the manner of his conduct of a case, i. e., his demeanor, deportment and ethical conduct; but in his second

---

3. Defendant is the party in the best position to determine whether his failure to appear was willful. The court in the initial hearing by explaining the meaning of willful to the defendant and asking appropriate questions could doubtless readily have determined whether or not to accept the plea.

capacity, as agent and attorney for the Executive, he is responsible to his principal and the courts have no power over the exercise of his discretion or his motives as they relate to the execution of his duty within the framework of his professional employment. This dual role is perhaps best illustrated as follows:

> Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary power of the attorneys of the United States in their control over criminal prosecutions.

United States v. Cox, supra note 4, 342 F.2d at 171." 382 F.2d at 481.

■■ ■■ Again absent some compelling need for, or explicit exception allowing, judicial intervention, the broad power of the Executive branch to prosecute offenses against the United States should not be disturbed. This generally includes a power on behalf of the Government to take its case to trial. "On the District Attorney rests the responsibility to determine whether to prosecute, when to prosecute and on what charges to prosecute. A case is not to be summarily dismissed because the court disagrees with some policy of the District Attorney's office." United States v. Fleming, 215 A.2d 839 (D.C.App.1966) cited in Newman v. United States, *supra*, 382 F.2d at 481 n. 5.

In United States v. Gainey, 142 U.S. App.D.C. 262, 440 F.2d 290 (1971) after the defendant was sentenced by the court in a third case, guilty pleas were tendered in two remaining cases. After determining that the accused did not understand the charges, the two guilty pleas were refused. Rather than docketing the cases for trial, the district court, citing a large backlog of criminal cases, dismissed over the Government's objections. In reversing, the Circuit Court states:

> "The reasons for the dismissal reflected in the district court's memorandum are entirely laudable. Faced with the duty to alleviate their clogged dockets, trial judges should address themselves to the backlog problem. Nevertheless, we conclude that it was not within the trial court's discretion to enter these dismissals. In Newman v. United States, 127 U. S.App.D.C. 263, 382 F.2d 479, 480 (1967), this court said:
>
>> 'Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.'
>
> \*  \*  \*  \*  \*  \*
>
> "We conclude that it is a proper function of the United States attorney to decide whether a person charged with crime should be brought to account as to other alleged crimes committed by the same defendant.
>
> "Accordingly, we find that the district court did not have the discretionary power to dismiss the two cases in question and that said cases must be remanded to said court for further proceedings." 440 F.2d at 291–292.

See also Petition of United States, 306 F.2d 737 (9th Cir. 1962).

We hold that the trial court erred in dismissing the indictment. The order dismissing the indictment is reversed and vacated. The case is remanded to the trial court for further proceedings consistent with the views herein expressed.