UNITED STATES of America,
Appellant,

v.

Gregorio JARAMILLO, Appellee.

UNITED STATES of America,
Appellant,

v.

Michael Eugene STURDEVANT,
Appellee.

Nos. 74–1651, 74–1652.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1974.

Decided Jan. 31, 1975.

Kenneth E. Tilsen, St. Paul, Minn. and Robert C. Heeney, Rockville, Md., for appellees.

Edward R. Korman, Atty., Dept. of Justice, Washington, D. C., for appellant.

Before LAY and HEANEY, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

Appellees Gregorio Jaramillo and Michael Eugene Sturdevant were charged,

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

by indictment in the United States District Court for the District of South Dakota, with violating and attempting to violate 18 U.S.C. § 231(a)(3).[1] The charges arose out of the occupation of Wounded Knee by members of the American Indian Movement. The case was transferred to the District of Nebraska pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. Trial was to the court. After both sides had rested, the trial judge, by order denominated "JUDGMENT OF ACQUITTAL," found the appellees not guilty of the offense charged and released them from custody. The government appeals. We hold that we are without jurisdiction to hear the cause and dismiss the appeal.

The power of the government to appeal from a judgment in favor of the defendant in a criminal case is conferred by statute. United States v. Sanges, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892). Controlling in this case is 18 U.S.C. § 3731, as amended by the Omnibus Crime Control Act § 14(a), Pub.L. No. 91–644, 84 Stat. 1890 (1971). It reads in relevant part:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

> *  *  *  *  *  *·

> The provisions of this section shall be liberally construed to effectuate its purposes.  *  *  *

The government attempts to fit this case to the statutory language by arguing: (1) the order of the District Court was in fact a dismissal and hence appealable; and (2) the statute allows government appeals in all cases where the appeal does - not offend the double jeopardy clause of the Fifth Amendment and there is no offense here.

### I.

The District Court's final disposition of the matter on the merits looked beyond the face of the record and was bottomed on facts adduced at trial. It was thus properly characterized as an acquittal. United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970).

The charging statute, 18 U.S.C. § 231(a)(3), requires, as an element of the government's proof, that the law enforcement officer affected by the appellees' acts be "lawfully engaged in the lawful performance of his official duties incident to and during the commission of [the] civil disorder."[2] As part of its defense in chief, the appellees introduced evidence of the military involvement in

---

1. The indictment against Gregorio Jaramillo reads:

   On or about the 9th day of March, 1973, at Wounded Knee, in the District of South Dakota, Gregorio Jaramillo did wilfully, knowingly and unlawfully commit an act to obstruct, impede and interfere with U. S. Marshals and agents of the F. B. I., and did wilfully, knowingly and unlawfully attempt to commit an act to obstruct, impede and interfere with U. S. Marshals and agents of the F. B. I., who were then engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder at Wounded Knee, South Dakota, which civil disorder obstructed, delayed and adversely affected commerce and the conduct and performance of a federally protected function, in that Gregorio Jaramillo did attempt to enter the community of

Wounded Knee with a firearm, ammunition, medical supplies and clothing, in violation of 18 U.S.C. § 231(a)(3).
   The indictment against Michael Eugene Sturdevant is substantially identical.

2. 18 U.S.C. § 231(a)(3) reads:
   (3) Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—
   Shall  *  *  *  [be punished].

the Wounded Knee operation. The purpose of this evidence was to show that the law enforcement officers were not "lawfully engaged in the lawful performance" of their official duties, but were acting in violation of 18 U.S.C. § 1385, the posse comitatus statute. It reads:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.
> * * *

The government concedes that the issue of lawfulness was determined by the District Court as the fact-finder but argues that the determination was in reality a dismissal under Rule 12 because it was based on a defense in law to the prosecution's evidence. It also argues that the District Court erred in entering

this "dismissal" on § 1385 grounds since even if the federal officers violated the section, the violation did not render their activities unlawful.

We find no merit to the government's assertion that the determination was a dismissal. The trial judge decided rightly or wrongly after both parties rested that "lawful engagement" and "lawful performance" were essential elements of the government's case and had to be proved by it. It looked beyond the face of the record, considered all of the evidence adduced at trial and decided that the government had failed to meet its burden.[3] This conclusion went to the very heart of the appellees' guilt or innocence,[4] and was properly characterized as an acquittal,[5] because the trial judge determined, on the basis of the evidence developed at trial, that the proof was insufficient to support beyond a reasonable doubt the allegations of the indictment. *See* United States v. Sisson, *supra* 399 U.S. at 290 n. 19, 90 S.Ct.

---

**3.** The fact that a full-blown trial had taken place is one fact that distinguishes this appeal from recently permitted government appeals. *See* Serfass v. United States, 492 F.2d 388 (3rd Cir. 1973), cert. granted, 416 U.S. 955, 94 S.Ct. 1967, 40 L.Ed.2d 305 (1974); United States v. Martin Linen Supply Co., 485 F.2d 1143 (5th Cir. 1973), cert. denied, 415 U.S. 915, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974); United States v. Pecora, 484 F.2d 1289 (3rd Cir. 1973); United States v. Velazquez, 490 F.2d 29 (2nd Cir. 1973).

**4.** This factor is the most significant and distinguishes this appeal from two recently permitted government appeals. *See* United States v. Brown, 481 F.2d 1035 (8th Cir. 1973); United States v. Clay, 481 F.2d 133 (7th Cir.), cert. denied, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247 (1973).

**5.** The trial court's thought processes are revealed in its opinion. It stated:

> * * * If there was "use" of "any part of the Army or the Air Force" to "execute the laws" and if that use pervaded the activities of the United States marshals and the Federal Bureau of Investigation agents, the marshals and the agents cannot be said to have been "lawfully engaged" in the "lawful performance" of their official duties.

The court went on to say:

> Upon consideration of the evidence, I conclude that there is a reasonable doubt

as to whether the law enforcement officers were "lawfully engaged in the lawful performance of their official duties." Beyond a reasonable doubt the aerial reconnaissance was of no usefulness to the law enforcement officers. I cannot say, however, beyond a reasonable doubt that Colonel Warner's advice to Department of Justice officials, including Special Agent in Charge Trimbach of the Federal Bureau of Investigation and Director Colburn of the United States Marshal Service, was not utilized by the recipients of the advice and that conduct of the operation before and during March 9 was not appreciably affected by his advice. Neither can I find beyond a reasonable doubt that military personnel who repaired and maintained the armored personnel carriers did not contribute materially to the operation being carried out by the law enforcement officers.

> It follows that the defendants must be acquitted.

> Lest anyone be misled, let it be emphasized that this court is not finding that the actions of the Federal Bureau of Investigation agents or the United States marshals were unlawful or that anyone violated 18 U.S.C. § 1385, the posse comitatus statute. The prosecution's burden was to prove in court that the actions of those officers were lawful. It failed to carry that burden. My holding means no more than that.

2117; United States v. Jorn, 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Federal Rules of Criminal Procedure 29(a). The statute does not provide for a government appeal from an acquittal. United States v. Brown, 481 F.2d 1035, 1039 (8th Cir. 1973) (dictum).

## II..

■ Even if we accept for purposes of this appeal the government's contention that the statute permits an appeal in those criminal cases in which the appeal would not be barred by the double jeopardy provision of the Constitution, we cannot accept its argument that the Constitution would not be offended by this appeal from an acquittal.

The government's constitutional argument confronts the decisions of the Supreme Court that have held since Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904), that the double jeopardy clause prohibits a government appeal from an acquittal in a criminal case. In the words of the Court in Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) (Per Curiam):

> The petitioners were tried under a valid indictment in a federal court which had jurisdiction over them and over the subject matter. * * * It terminated with the entry of a final judgment of acquittal as to each peti-tioner. The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless "[the] verdict of acquittal was final, and could not be reviewed * * * without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution." * * *

*Id.* at 143, 82 S.Ct. at 672 (Citations omitted.).

The government attempts to distinguish *Kepner* and *Fong Foo* by pointing out that a reversal on the merits in them would have resulted in a new trial, whereas a new trial would not be necessary here.[6] It argues that the central policy of the double jeopardy clause is the protection it affords the individual from the hazards of a second trial. *See* Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). If a second trial is truly unnecessary,[7] it asserts that the public's interest in the even application of the criminal law and the conviction of the guilty outweighs any harm to the individual. Hence in such situations, the argument goes, the double jeopardy clause should not prohibit appellate jurisdiction.[8]

The government conceded in oral argument, however, that this limiting of the earlier cases is to no avail unless the dictum in United States v. Sisson, *supra*, is disregarded. There, a reversal on the

---

**6.** The government's position as to when jeopardy attaches seems to change from time to time. In a brief filed with the Supreme Court in Serfass v. United States, *supra*, at page 9, it states the rule to be that "a defendant has been placed in jeopardy only upon the commencement of a trial before the trier of fact." In United States v. Jenkins, 490 F.2d 868 (2nd Cir. 1973), cert. granted, 417 U.S. 908, 94 S.Ct. 2603, 41 L.Ed.2d 211 (1974), Brief for the Appellant at 10, it states the rule to be that jeopardy does not attach even after trial if a purely legal error can be isolated and corrected on appeal, at least where a retrial is not necessary for a fact already found. Its position in *Jenkins* is close to its position here. However, here, further fact-finding is necessary, and a new trial may be required if the original fact-finder is not available on remand. We feel that the Second Circuit correctly decided the *Jenkins* case against the government's position. *See also* United States v. Wilson, 492 F.2d 1345 (3rd Cir. 1973), cert. granted, 417 U.S. 908, 94 S.Ct. 2603, 41 L.Ed.2d 211 (1974).

**7.** The government appears to assume that no second trial would be necessary here, an assumption that may or may not be true. If the judge who heard the matter initially were still available when the case was remanded, no new trial would be required. If he were not available, a new trial would be necessary as the judge who tried the case did not make findings as to all elements of the offense.

**8.** *See* Atlas, Double Jeopardy and Government Appeals of Criminal Dismissals, 52 Texas L.Rev. 303 (1974); Mayers and Yarbrough, Bis Vexaro: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1 (1960); Miller, Appeals by the State in Criminal Cases, 36 Yale L.J. 486 (1927).

merits would not have resulted in a second trial because the government was appealing from an order of the trial judge setting aside the jury verdict of guilty. Yet, after finding that the trial judge had acquitted the defendant, and then ruling that the appeal was prohibited by statute,[9] the Court said:

> * * * Quite apart from the statute, it is, of course, well settled that an acquittal can "not be reviewed, on error or otherwise, without putting [the defendant] twice in jeopardy, and thereby violating the Constitution. * * *" * * *

*Id.* 399 U.S. at 289, 90 S.Ct. at 2129 (Citations omitted.).

We believe that the dictum has constitutional significance and that *Sisson* at least stands for the proposition that the government cannot appeal from a judgment of acquittal under the circumstances of this case. We are persuaded to this view by the long acceptance of Kepner v. United States, *supra*, and the discussion of a unanimous Court in Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).[10]

In *Price*, the defendant was charged in a state court with murder and convicted of the lesser included offense of voluntary manslaughter. On appeal to the Court of Appeals of Georgia, the conviction was reversed. In the second trial, the state again charged the defendant with murder, rejecting his plea of double jeopardy. The defendant was again convicted of voluntary manslaughter and appealed to the Supreme Court. That Court reversed the conviction, holding that the acquittal of murder in the first trial was final and could not be retried. It said:

> * * * [T]he holding in the Kepner case—that there could be no appeal from an acquittal because such a ver-

dict ended an accused's jeopardy—was applicable.

> * * * [T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal * * *

*Id.* at 329, 90 S.Ct. at 1761.

This unequivocal statement that the double jeopardy clause makes final a judgment of acquittal even after appeal by the defendant accords the "dictum" in *Sisson* the weight of an alternative holding.

In the light of these decisions of the Supreme Court, we fail to see how we can accept jurisdiction of this case consistent with the double jeopardy clause. Moreover, we believe there are good policy reasons for dismissing the government's appeal.

The relief sought necessarily requires that we remand the case to the trial court for further findings on the basis of the record previously developed, for the judge below expressly declined to rule upon all elements of the offense charged. This would subject the appellees to the same hazards incurred in a second trial that are clearly prohibited by the double jeopardy clause. The remand would provide the government with another chance to convict the appellees by exhaustively reviewing the record, marshaling the facts and rearguing the case in a manner not previously presented. The appellees would be put to further expense, ordeal and anxiety. Moreover, while it is probable that the parties would be before the same trial judge on remand, there is no way to guarantee that result. Thus, a new trial may well be required. Even if the same trial judge were available on remand, there is nothing to insure that the passage of time and the resultant dimming of the memory will not adversely affect the rights of the appellees. Finally, a rule that would permit a new trial in every

---

9. The appeal arose under the pre-amended version of 18 U.S.C. § 3731.

10. Eight members of the Court joined in the opinion of the Chief Justice. Mr. Justice Blackmun did not participate.

judge-tried criminal case where the trial court specifically applied an erroneous rule of law in deciding to acquit, would discourage the court trial of criminal cases. Such a rule would permit court-acquitted defendants to be tried a second time while sparing jury-acquitted defendants from the same ordeal even though the court's instructions to the jury were clearly wrong. *See* Green v. United States, *supra.* For these reasons and those previously expressed, we dismiss the appeal for lack of appellate jurisdiction.

Appeal dismissed.