592 A.2d 669

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Despina SMALIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1990.

Resubmitted March 22, 1991.

Decided May 9, 1991.

Dissenting Opinion of Justice Papadakos July 23, 1991.

Norma Chase, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal Alexander Mericli and James R. Gilmore, Asst. Dist. Attys., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

In this appeal we are asked to decide whether appellant's constitutional rights will be violated if her bench trial is resumed following an extended stay of the proceedings occasioned by the Commonwealth's appeal from an order sustaining demurrers to certain, but not all, criminal charges.

Appellant, Despina Smalis, along with her husband, owned adjoining buildings located in the Oakland section of Pittsburgh. The premises housed the "Chances R" restaurant and lounge on the first floor and seven moderately-priced rental apartments on the second floor. On the morning of February 12, 1979, at approximately 6:30 A.M., a fire occurred that resulted in the death of two tenants, Judith Ann Ross and Dale Burton. Following a grand jury investigation into the nature of the fire, criminal informations were filed by the Allegheny County District Attorney's Office charging appellant and her husband with criminal homicide,[1] reckless endangerment,[2] causing a catastrophe,[3] failing to prevent a catastrophe,[4] and with respect to appellant alone, securing the execution of documents by deception [5] in connection with the failure to install two fire-resistant metal doors in the building.

1. 18 Pa.C.S. § 2501.
2. 18 Pa.C.S. § 2705.
3. 18 Pa.C.S. § 3302(a).
4. 18 Pa.C.S. § 3303.
5. 18 Pa.C.S. § 4114.

The parties proceeded with a bench trial in the Court of Common Pleas of Allegheny County on November 12, 1980. At the close of the Commonwealth's case-in-chief, appellant and her husband challenged the sufficiency of the evidence by way of a demurrer. The trial court sustained the demurrer to the evidence with respect to the charges of murder, voluntary manslaughter and causing a catastrophe. As was the practice at the time in this Commonwealth, the remaining misdemeanor charges were stayed by the trial court pending the outcome of the Commonwealth's appeal to the order sustaining the demurrer. *See Commonwealth v. Wimberly*, 488 Pa. 169, 411 A.2d 1193 (1980).

The appeal to the Superior Court was taken by the Commonwealth on December 19, 1980. The Superior Court quashed the appeal on the ground that the sustaining of the demurrer was the functional equivalent of an acquittal and therefore a direct appeal by the Commonwealth was barred by the Double Jeopardy Clause of the Fifth Amendment of United States Constitution.[6] *Commonwealth v. Smalis*, 331 Pa.Super. 307, 480 A.2d 1046 (1984). On appeal to this Court, we reversed, finding the appeal not constitutionally offensive and remanded to the Superior Court with instructions to pass upon the merits of the demurrer ruling entered by the trial court. *Commonwealth v. Zoller*, 507 Pa. 344, 490 A.2d 394 (1985).[7]

At this point, appellant and her husband petitioned for a writ of certiorari to the United States Supreme Court. The Court accepted the case and thereafter held that the grant of a demurrer at the close of the prosecution's case-in-chief constituted an acquittal under the Double Jeopardy Clause thus barring an appeal by the Commonwealth. *Smalis v.*

**6.** The Fifth Amendment of the United States Constitution provides, in pertinent part, that "No person shall be ... subject for the same offense to be twice put in jeopardy of life or limb; ..." Through the Fourteenth Amendment, this provision is applicable to the States. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

**7.** Before this Court, the case was consolidated with another case pertaining to the same double jeopardy issue. *Commonwealth v. Zoller*, 318 Pa.Super. 402, 465 A.2d 16 (1983).

*Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986).

In accordance with this mandate, this Court entered a *per curiam* order on July 29, 1986, vacating our previous order and reinstating the order of the Superior Court which quashed the Commonwealth's appeal. *Commonwealth v. Smalis,* 511 Pa. 229, 512 A.2d 634 (1986).

The Commonwealth next sought resumption of trial on the remaining misdemeanor charges originally stayed by the trial court. On December 12, 1986, appellant and her husband filed a motion to dismiss the remaining charges on various constitutional grounds. This motion, following briefing and oral argument, was denied by the trial court on January 9, 1987. Because of the potential constitutional implication caused by the delay of the proceedings, the trial court certified the order denying the motion to dismiss the remaining charges to the Superior Court, pursuant to 42 Pa.C.S. § 702(b). The Superior Court, on appeal, affirmed the trial court's order denying the motion to dismiss, and found the constitutional claims wanting in merit. The court remanded the matter to the trial court for further proceedings. *Commonwealth v. Smalis,* 375 Pa.Super. 601, 545 A.2d 284 (1988). Appellant's husband sought no further review. Appellant, however, filed an application for reargument, which was denied on August 5, 1988. We then granted appellant's petition for allowance of appeal to examine the constitutional impact, if any, of the delay in the resumption of trial on the outstanding misdemeanor charges.

Appellant attacks the resumption of her trial on three constitutional fronts. First, she equates the delay with that of a "mistrial" and therefore asserts that the resumption of trial on the outstanding misdemeanor charges would offend the Double Jeopardy Clause. Appellant argues that the substantial break in the continuity of the trial, in effect, removed jeopardy since the immediacy of the threat to her liberty was terminated with the stay. We disagree with this assertion.

The Double Jeopardy Clause has been recognized by the United States Supreme Court as having three separate and distinct objectives: the protection of the integrity of a final judgment, the prohibition against multiple prosecutions, even where no final determination of guilt has been made, and the proscription against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *See also Commonwealth v. Zoller*, 507 Pa. at 349–52, 490 A.2d at 396–98; *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984). Under the facts of this case, we are confronted with neither a final judgment, multiple prosecutions nor multiple punishments. Rather, with respect to the remaining misdemeanor charges, jeopardy does not come into play because the trial court denied appellant's demurrer to these charges and found as a matter of law that the Commonwealth's evidence was sufficient to establish appellant's guilt beyond a reasonable doubt. *See Commonwealth v. Mitchell*, 460 Pa. 665, 334 A.2d 285 (1975); *Commonwealth v. DePetro*, 350 Pa. 567, 39 A.2d 838 (1944). Therefore, since these remaining charges survived the demurrer challenge and as of this date appellant has not been "acquitted" of these charges, we see no double jeopardy implication that would preclude further prosecution.

Appellant's second argument pertains to an alleged violation of her rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. The Sixth Amendment provides that an accused, "[i]n all criminal prosecutions ... shall enjoy the right ... to be confronted with the witnesses against him, [and] to have compulsory process for sustaining witnesses in his favor." [8] The extent to which a criminal defendant can cross-examine the witnesses testifying against him is controlled by the confrontation clause. The purpose of the clause is to provide an accused with an effective means of challenging the

8. United States Constitution, Amend. VI. The Pennsylvania Constitution guarantees an accused the right to "meet the witnesses face to face." Pennsylvania Constitution, Art. 1, § 9.

evidence against him by testing the recollection and probing the conscience of an adverse witness. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Nothing in this record indicates that appellant's rights under this specific clause have been violated. In the instant case, these proceedings were stayed after the Commonwealth presented all of its evidence. Appellant, prior to the stay order, did have full opportunity to confront and cross-examine all of the Commonwealth's witness during the case-in-chief. Thus, this constitutional protection has not been violated by the delay in trial.

█ Finally, appellant maintains that the extended delay in the resumption of trial has deprived her of due process protection found in the Fifth and Fourteenth Amendments that guarantee her the right to a fair trial. This argument, although general in nature, requires us to utilize the speedy trial analysis as articulated by United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In determining whether the right has been violated, a court should weigh four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker, id.* at 530, 92 S.Ct. at 2192. Because "the right to a speedy trial is a more vague concept than other procedural rights", courts must "approach speedy trial cases on an ad hoc basis." *Barker, id.* at 521, 530, 92 S.Ct. at 2187, 2192.

In applying this four-part balancing test to determine whether the delays infringed upon appellant's right to a speedy trial, we proceed to analyze each of these factors as they pertain to the facts of appellant's case. First, all would concede that the length of the initial delay prompted by the Commonwealth's appeal of the demurrer order— approximately six years, from the date of the trial court's stay order to the filing of appellant's motion to dismiss— was lengthy and presumptively prejudicial, thus triggering this analysis. However, closely related to its length is the reason that would justify the delay, the second factor. Here, the Commonwealth's appeal from the sustaining of

appellant's demurrers was allowable under the well-established law of this Commonwealth applicable at that time. *See, e.g., Commonwealth v. Wimberly,* 488 Pa. at 172, 411 A.2d at 1194 *citing Commonwealth v. Long,* 467 Pa. 98, 354 A.2d 569 (1976); *Commonwealth v. Simpson,* 310 Pa. 380, 165 A. 498 (1933). It was not until the United States Supreme Court rendered its decision in this case that this practice was discontinued. Thus, the explanation for the delay was reasonable under existing law and the Commonwealth's decision to file a direct appeal can not be characterized as evincing a bad faith or dilatory purpose. *See United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986).

The third factor to be considered is appellant's responsibility to assert her right to a speedy trial. While appellant did oppose the granting of the stay in open court at the hearing held on the matter, she did not subsequently challenge this stay order until the filing of her motion to dismiss the remaining charges. Stay orders are reviewable by the appropriate appellate courts. *See generally* Pa. R.A.P. 1501 *et seq.* and 1701 *et seq.* Appellant's decision not to challenge the stay by way of appellate review weighs against her position that she fully asserted her right to a speedy trial.

Last, the issue of prejudice to appellant must be viewed in terms of appellant's ability to receive a fair trial. As stated by the United States Supreme Court in *Barker v. Wingo:*

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to

recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

407 U.S. at 532, 92 S.Ct. at 2193 (citations omitted).

With respect to this factor of the balancing test, appellant offers nothing more than a general assertion of prejudice and fails to set forth any specific argument on this point. Rather, she merely points to the possibility of impairment of her ability to a fair trial given the voluminous testimony that the trial court would be required to judge. This "possibility of prejudice" is not sufficient to support appellant's position that her due process rights would be violated should her trial resume. It is significant to note that following oral argument on appellant's motion to dismiss the outstanding charges, and upon review of the record, the trial court ordered that the trial should continue. Implicit in this determination is its ability to further hear the case. The trial court, and not this Court, sits at the appropriate vantage point to make this decision and absent an abuse of discretion, it should not be disturbed. Therefore, without more than only a possibility of prejudice, this Court is unable to afford appellant the requested relief.

On the record before us we cannot hold that the delay in resuming appellant's trial on the remaining misdemeanor charges will deny her the right to a fair trial.

Accordingly, the order of the Superior Court is affirmed and the case is remanded to the Court of Common Pleas of Allegheny County for further proceedings.

It is so ordered.

ZAPPALA, J., files a dissenting opinion in which LARSEN, J., joins.

PAPADAKOS, J., files a dissenting opinion in which LARSEN, J., joins.

384

ZAPPALA, Justice, dissenting.

The majority contends that the lengthy stay of the proceedings does not violate the principle of double jeopardy because there was neither a final judgment nor multiple prosecutions or punishments. For purposes of applying the double jeopardy concept, I perceive no distinction between multiple prosecutions and the piecemeal prosecutions afforded by the hiatus between the trial and the "continuation" of the trial in this case. The "continuance" in this case effectively terminated the trial—what the Appellant now seeks is to prevent a second trial on the misdemeanor charges.

Article 1, § 10 of the Pennsylvania Constitution states, in relevant part, that "No person shall, for the same offense, be twice put in jeopardy of life or limb...." The protection afforded under the double jeopardy clause seeks to ensure that an accused will not be subject to the harassment of successive trials. It is facetious to suggest that a trial on the misdemeanor charges would not be a successive trial. No final judgment on those charges was entered in 1980, but prosecution of those charges was certainly undertaken. Jeopardy attached in this case when the trial judge began to hear evidence.

There are varying circumstances that will call into play the double jeopardy clause, but this case presents only the very simplest of those. It is unnecessary to string cite cases, or engage in intellectual debate, to see that this factual scenario was exactly what Article 1, § 10 was intended to guard against.

The trial of the Appellant was terminated without a verdict on the misdemeanor charges when the Commonwealth appealed from the trial court's order sustaining the demurrer to several of the charges. This was not a mere "continuance"; nor is the second trial a "resumption" of the first. Whatever the practice in the Commonwealth may have been in November, 1980, the double jeopardy clause may not be reshaped to accommodate the Commonwealth's reliance on that practice. The double jeopardy clause pro-

tects the accused. It may not be reinterpreted to protect the Commonwealth.

I need look no further than our own Constitution for the protections afforded to the Appellant and do not address the double jeopardy clause of the federal Constitution for that reason. I dissent.

LARSEN, J., joins in this Dissenting Opinion.

PAPADAKOS, Justice, dissenting.

I am convinced that the adjournment of the non-jury trial that occurred in this case, which, in turn, resulted in a ten-year break in the continuity of that trial (a substantial period of time by any standard), caused by repeated appeals instigated by the Commonwealth, is the functional equivalent of a mistrial in that it removed the immediacy of the threat to the defendant's liberty. It is, accordingly, an event that terminated jeopardy. Once jeopardy has ended, further proceedings directed at determining guilt or innocence, even the completion of an interrupted trial, are prohibited.

Jeopardy may be deemed to "continue" after the abortion of a trial only when that action was based on manifest necessity. The instant stay order was not; the Appellant-defendant (and her co-defendant) were willing to suffer the reinstatement of the murder charges to avoid the interruption of the trial. The prosecutor rejected this alternative.

Jeopardy exists when a trial is in some sense in progress, when some phase of the determination of guilt or innocence is taking place. I am persuaded that the constitutional provision that a defendant may not be "twice put" in this condition gives a defendant a right to reasonable continuity of the process by which guilt or innocence is determined. An indefinite adjournment that results in a ten year break in the continuity of the trial is an event terminating jeopardy and precludes retrial if it is ordered over the protest of the defendant (as here), in the absence of manifest necessity

(as here), and is caused by multiple appeals, instigated by the Commonwealth (as here).

The indefinite nature of the adjournment in this case and its resultant ten year delay distinguish this case from the handful of cases in other jurisdictions that have considered and rejected double jeopardy claims arising out of mid-trial continuances. The longest break involved in any such case appears to have been a 42–day adjournment (to a date certain) in a North Carolina juvenile proceeding. *Matter of Hunt,* 46 N.C.App. 732, 266 S.E.2d 385 (1980). A number of other cases have found shorter recesses to be inoffensive to the Double Jeopardy Clause. *Webb v. Hutto,* 720 F.2d 375, 379 (4th Cir.1983) (five days); *State v. Sipe,* 537 So.2d 178 (Fla.App.1989) (four weeks); *State v. Poullard,* 532 So.2d 327, 330 (La.App.1988) (two days); *State v. Johnson,* 529 So.2d 466 (La.App.1988) (two weeks); *King v. State,* 527 So.2d 641, 644 (Miss.1988) (six days); *State v. Carter,* 289 N.C. 35, 220 S.E.2d 313, 318 (1975) (seven days); *Wortham v. State,* 750 S.W.2d 326, 328 (Tex.App.1988) (seven days). *See also, State v. Jackson,* 485 So.2d 630 (La.App.1986) (recess of unspecified length held not to implicate Double Jeopardy Clause).

What these cases establish is that a defendant cannot demand perfect continuity of the trial process. They do not negate the existence of a right to reasonable continuity.

Two decisions have found double jeopardy to be violated following a recess in a non-jury trial. In *State v. O'Keefe,* 135 N.J.Super. 430, 343 A.2d 509 (1975), the prosecutor was granted a two-week recess so that he could obtain evidence without which his case was insufficient. The court found his neglect inexcusable and held that under such circumstances the continuance was an unreasonable break in the continuity of the trial, stating at 343 A.2d at 514:

A continuance differs from a mistrial-retrial in that it does not deprive the defendant of a verdict rendered by the original tribunal. Thus, a continuance protects the defendant's interest in securing an acquittal from a tribunal which has heard a weak State's case—one basis for

the prohibition against double jeopardy. [Citations omitted.] Yet, double jeopardy has been invoked to prohibit a second prosecution even though the first jury heard no evidence before a mistrial was declared. [Citations omitted.]

Accordingly, a continuance might also violate the double jeopardy prohibition, for the essential element of double jeopardy is the oppressive harassment of a presumably innocent person attendant upon a repeated prosecution. There is not only the anxiety of a second trial, but the often greater anxiety in awaiting a second trial. This affects a defendant personally as well as in his relations with others.

*Accord: Belveal v. Rambo*, 487 P.2d 714 (Okl.Cr.App.1971).

The *O'Keefe* decision recognized that there are policy concerns underlying the Double Jeopardy Clause that go beyond the interest of the defendant in the identity of a tribunal or his interest against proceedings that allow a prosecutor an opportunity to improve on a previously presented case, and that a defendant's interest against protraction may be infringed even when the latter two interests are not.

The *O'Keefe* court was not alone in recognizing the interest against protraction that the Clause protects. In *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the United States Supreme Court stated:

[T]he constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." [Footnote omitted.] The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. *It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing,* and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is com-

pleted. [Emphasis added; footnote omitted.] [*Id.* at 503–504, 98 S.Ct. at 829–30, 54 L.Ed.2d at 727.]

Similar observations appear in *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957):

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, *thereby subjecting him to embarrassment, expenses and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as* enhancing the possibility that even though innocent he may be found guilty. [Emphasis added.] [*Id.* at 187–88, 78 S.Ct. at 223, 2 L.Ed.2d at 204.]

And, in *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the Supreme Court stated:

> Society's awareness of the *heavy personal strain* which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws. [*Id.* at 479, 91 S.Ct. at 554, 27 L.Ed.2d at 553 (1971)].

One commentator has suggested that the interest against protraction is the real interest underlying the interest in the identity of the tribunal:

> A defendant has a valued right to have his trial completed by a particular tribunal, not because he has a constitutional interest in the identity of any particular tribunal, but because he has an interest in being able "to conclude his confrontation with society" [footnote omitted] once it has begun. Once a trial begins, a defendant has a legitimate interest in getting the trial over with "once and for all." [Footnote omitted.] It follows, therefore, that he also has an interest in continuing with "the first jury" [footnote omitted] impaneled in the case because changing the jury means interrupting the trial. To that extent, *the defendant's interest in retaining the particular tribunal with which he began is merely an incident of*

*his primary interest in being able to complete the trial itself.* [Westen and Drubel, Toward a General Theory of Double Jeopardy, 1978 Supreme Court Review 81, 90; emphasis added.]

While the U.S. Supreme Court has resisted any erosion of a defendant's interest in the identity of the tribunal, in *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), they made clear that the interest was not the only one protected by the Clause, stating:

[Double jeopardy] concerns—the finality of judgments, *the minimization of harassing exposure to the harrowing experience of a criminal trial, and* the valued right to continue with the chosen jury—have combined to produce the federal law that in a jury trial jeopardy attaches when the jury is empaneled and sworn. [*Id.* at 38, 98 S.Ct. at 2162, 57 L.Ed.2d at 33.]

I believe that the concerns protected by the Clause have a dignity of their own; it is not only those threatened proceedings that give a prosecutor a chance to improve a prior performance that subject a defendant to "embarrassment, expense and ordeal" and inflict a "continuing state of anxiety and insecurity" upon a defendant. A second jeopardy need not involve a different tribunal to be a "harrowing experience" and an occasion of "heavy personal strain." Nor is any special showing of a probability of the conviction of an innocent defendant required for a valid double jeopardy claim; we recognized in *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977), the right involved is not only a right not to be convicted unjustly following the termination of the initial jeopardy but a right not to be tried at all.

The consequence of recognition of the double jeopardy implications of protracted recesses is not their absolute preclusion—there may be occasions when a lengthy recess presents a reasonable alternative to an ordinary mistrial—but their exposure to scrutiny for manifest necessity. Instantly, manifest necessity was non-existent. To the contrary, the ten-year delay here was caused by the Commonwealth's stubborn insistence on multiple appeals and pro-

ceedings all to the detriment of Appellant's right to a prompt and speedy trial.

It will be remembered that the remaining charges here were stayed pending *the Commonwealth's* appeal of the order sustaining the demurrers. The Superior Court quashed the appeal and held that the principles of double jeopardy barred the Commonwealth from appealing an order sustaining a demurrer to the evidence. *Commonwealth v. Smalis*, 331 Pa.Superior Ct. 307, 480 A.2d 1046 (1984). *The Commonwealth* appealed to this Court and we reversed the Superior Court and remanded with instructions to the Superior Court to pass upon the merits of the demurrer ruling entered by the trial court. *Commonwealth v. Zoller*, 507 Pa. 344, 490 A.2d 394 (1985). Appellant petitioned the United States Supreme Court for a writ of certiorari, which was granted. The United States Supreme Court agreed with the Superior Court and held that the Commonwealth's initial appeal of the demurrers was barred by double jeopardy and reversed this Court. *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986). In accordance with this mandate, we entered a per curiam order vacating our previous order and reinstating the order of the Superior Court which quashed the Commonwealth's appeal. Our per curiam order was filed on July 29, 1986; the trial in this case had commenced on or about November 12, 1980.

At this point, *the Commonwealth* sought to resume trial on the remaining charges of involuntary manslaughter, reckless endangerment, failure to prevent a catastrophe and theft by deception. Appellant filed a motion to dismiss these charges on double jeopardy, due process and confrontation clause grounds. The Superior Court, utilizing primarily a speedy trial analysis, affirmed the trial court's denial of the motion to dismiss and remanded the case to the trial court for further proceedings. This appeal followed.

The Commonwealth took a calculated gamble on appeal and delay and they lost. There was no manifest necessity

to this course of action. The Commonwealth cannot ignore the consequences for double jeopardy purposes of their freely chosen acts.

Moreover, the interest against multiple prosecutions may also be infringed (as here) by permitting a trial to be bifurcated by an appeal. In *United States v. Jaramillo*, 510 F.2d 808 (8th Cir.1975), the court stated:

[Resumption of the nonjury trial] would subject the appellees to the same hazards incurred in a second trial that are clearly prohibited by the double jeopardy clause. The remand would provide the government with another chance to convict the appellees by exhaustively reviewing the record, marshaling the facts and rearguing the case in a manner not previously presented. *The appellees would be put to further expense, ordeal, and anxiety.* [*Id.* at 812; emphasis added.]

While it might be argued that applying the double jeopardy clause here would be retroactive and hence unfair to the Commonwealth because the Commonwealth relied on a procedure presumably valid at the time, that argument should be rejected. The cases dealing with issues of retroactive application of double jeopardy law have consistently held double jeopardy decisions to be retroactive notwithstanding prosecutorial reliance on prior standards. *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Vogel v. Commonwealth of Pennsylvania*, 790 F.2d 368 (3rd Cir.1986); *Commonwealth v. Richbourg*, 442 Pa. 147, 275 A.2d 345 (1971).

In short, I have concluded that constitutional standards enunciated under the Double Jeopardy Clause preclude further proceedings in this case. Simply because the instant facts do not fit neatly into previously existing categories is no reason not to find a constitutional violation where fundamental constitutional policies are impinged. The delay here was too long to allow us in any but a mechanical and overly technical way to conclude that initial jeopardy continued. The facts speak otherwise. It would be patently unfair to subject Appellant to further trial at this point.

The unfairness of subjecting Appellant to further trial here also, it seems to me, rises to the level of a due process violation by violating the Confrontation Clause of the Fifth Amendment. See, *Commonwealth v. Zoller*, 507 Pa. 344, 490 A.2d 394 (1985). The issue of the effect of the lapse of time on the ability of the factfinder to decide the case on the basis that the Constitution contemplates—that is to say, on live testimony—has been ignored by the majority.

This court previously held that the action of a defendant in demurring to the evidence was an "election" that removed any double jeopardy barrier to further proceedings, *Commonwealth v. Zoller, supra*, but nonetheless we *rejected* the suggestion that resumption of trial was an appropriate procedure, and remanded the companion case, which was also non-jury, for a new trial, stating:

> We ... stated in [*Wimberly, supra* ] that "[i]n those cases where this Court has concluded that a demurrer was granted in error, we have remanded for a new trial." *Id.*
>
> Accordingly, we reverse the Superior Court and remand *Commonwealth v. Zoller, supra*, where it was determined that the demurrer was granted in error, for a new trial. With regards to *Commonwealth v. Smalis, supra*, we remand to the Superior Court to pass upon the merits of the demurrer ruling entered by the trial court. [*Id.* at 359, 490 A.2d at 402; footnote omitted.]

It is implicit from the foregoing that this Court found resumption of a non-jury trial after a "recess" for an appeal objectionable for some reason independent of double jeopardy considerations, and Appellant cogently argues that the reason is that this Court recognized that the Confrontation Clause contemplates that a verdict will be rendered at a time when the confrontation it promises the defendant will be fresh in the mind of the factfinder, and does not countenance a separation of several years between the confrontation and the deliberations that produce the verdict. In *Jaramillo, supra*, the court, after holding that the resumption proposed there was as offensive to the Double Jeopar-

dy Clause as retrial, went on to point out that resumption would impair *other* constitutionally protected interests of the defendant:

> Even if the same trial judge were available on remand, there is nothing to assure that the passage of time and the resultant dimming of the memory will not adversely affect the rights of the appellees. [*Id.* at 512.]

The concerns expressed by the *Jaramillo* court are at least equally applicable to the instant case, particularly since this case involved 53 witnesses whose testimony consumed some 2,000 transcript pages over a period of four weeks. A conviction based on a record as voluminous and as stale as the instant one would deprive Appellant of due process of law.

I would dismiss the remaining charges against Appellant.

LARSEN, J., joins this Dissenting Opinion.