UNITED STATES of America,
Appellant,

v.

Russell MEANS, Appellee.

UNITED STATES of America,
Appellant,

v.

Dennis BANKS, Appellee.

Nos. 74–1784 to 74–1787.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1975.

Decided April 16, 1975.

Shirley Baccus-Lobel, Washington, D. C., for appellant.

Kenneth E. Tilsen, St. Paul, Minn., for appellees.

Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,* and LAY, Circuit Judge.

GIBSON, Chief Judge.

Following a break in jury deliberations because of the illness of a juror, the court dismissed all remaining charges against the defendants, Russell Means and Dennis Banks, on the basis of alleged prosecutorial misconduct. Thus, a protracted 8½ month jury trial on charges arising from the American Indian Movement occupation of Wounded Knee, South Dakota, came to an aborted end.

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

The defendants view the dismissal as a verdict of acquittal, or at the minimum, contend that the dismissal is unappealable in light of the Double Jeopardy Clause of the Fifth Amendment. The United States contends, on the other hand, that the dismissal can be viewed as nothing more than a declaration of a mistrial by operation of law and that the action of the District Court in dismissing the charges is subject to review under 18 U.S.C. § 3731 (1970). Further, the Government vehemently protests that the specifications of governmental misconduct were not warranted by the record and that dismissal of the charges upon the defendants' motion was a harsh and inappropriate remedy that deprived the public of its right to prosecute wrongdoers.

The 71-day occupation of Wounded Knee ended May 8, 1973. During that occupation the town and its facilities were appropriated in complete disregard of the legal and constitutional rights of the rightful occupants. Stealing and appropriation of food, goods, chattels and money was commonplace. A state of siege existed, and during the confrontation with its attendant gunfire, an FBI agent was critically wounded and the United States marshal for the District of Nebraska was permanently paralyzed. The alleged leaders of the occupation, defendants Russell Means and Dennis Banks, were indicted for 11 violations of federal law, one conspiracy count and 10 substantive counts.[1]

After a change of venue, the trial commenced at St. Paul, Minnesota, on January 8, 1974. The Government's case-in-chief ended July 24, 1974. The defendants presented their defense August 13–16. The Government's rebuttal took another seven days, after which sur-rebuttal by both sides was presented until both sides rested on September 5. Closing arguments were made to the jury on September 10 and 11, and the jury retired to deliberate on September 12.

On Friday, September 13, deliberations did not resume because one of the jurors became ill. On the 16th the Government informed the court at 2:00 p. m. that it refused to consent to have the case proceed to a conclusion with the remaining 11 jurors, as permitted by Fed.R.Crim.P. 23(b) with the consent of all parties and the court. The defendants had previously consented, and the court understandably was ready to give its consent to the 11 member jury. The court then at 3:00 p. m. the same day, treating a previously filed defense motion for judgment of acquittal as one for dismissal of the indictments, orally dismissed the remaining counts of the indictments against the defendants and discharged the jury.[2]

In its oral ruling the court specified the following incidents of governmental misconduct as meriting dismissal of the charges: (1) the refusal of the Department of Justice to accept the verdict of the eleven remaining jurors; (2) the Government's failure to furnish the defense with a prior and "completely contradictory" statement of Government witness Alexander David Richards; (3) deception of the court with regard to an alleged rape incident involving Government witness Louis Moves Camp as well as general dissatisfaction with the Government's handling of this witness; and (4) unlawful military involvement with federal civilian law enforcement at Wounded Knee. The court supplement-

---

1. A pretrial order of the District Court dismissed one of these counts against each of the defendants. United States v. Banks, 368 F.Supp. 1245 (D.S.D.1973). At the close of the Government's case defendants' motion for judgment of acquittal was granted as to five of the remaining 10 counts. United States v. Banks, 383 F.Supp. 368 (D.S.D.1974).

2. The memorandum decision of Chief Judge Fred Nichol, District of South Dakota, dismiss-

ing the indictments "in the interests of justice" is reported as United States v. Banks, 383 F.Supp. 389 (D.S.D.1974). An earlier ruling upon a defense motion to dismiss because of government misconduct, made during the course of the trial, in which Judge Nichol indicated he was at "the brink of dismissing this case," is reported as United States v. Banks, 374 F.Supp. 321 (D.S.D.1974).

ed its oral ruling with a written decision on October 9, 1974, finding governmental misconduct due to:

(1) The prosecutor's deliberate or at least negligent conduct in offering and failing to correct the "obviously false" testimony of Government witness Louis Moves Camp;

(2) The prosecutor's "intentional deception" of the court with respect to an alleged rape incident involving the witness Louis Moves Camp;

(3) The prosecutor's "grossly negligent conduct," if not "deliberate deception," in offering the testimony of Government witness Alexander David Richards when that testimony was directly contradicted in a previously transcribed interview;

(4) The prosecutor's having been "either deliberately or negligently dilatory" in searching for information detailing the extent of military involvement at Wounded Knee and Government "cover up" of the extent of that involvement;

(5) The prosecutor's reason, as discerned from media accounts of his statements, for refusing to stipulate to accept a jury comprised of the eleven remaining jurors.

The court predicated the dismissal upon the exercise of its supervisory power and found "it unnecessary to reach, the constitutional question of whether the prosecutor's conduct [had] prejudiced the trial to the point that due process was offended," and concluded that "the totality of the prosecutor's conduct was:

sufficiently offensive to our traditional notions of justice to demand exercise of the supervisory power."[3] The court did not specify whether the dismissal was with prejudice, but it did not declare a mistrial.[4] The United States appeals. We conclude that we are without jurisdiction to entertain the appeal.

The Criminal Appeals Act, 18 U.S.C. § 3731 (1970), provides in pertinent part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

\* \* \* \* \* \*

The provisions of this section shall be liberally construed to effectuate its purposes.

Our jurisdiction to hear this appeal depends upon whether the Government's appeal is barred by the Double Jeopardy Clause.[5]

As noted in United States v. Wilson, —— U.S. ——, ——, 95 S.Ct. 1013, 1020, 43 L.Ed.2d 232 (1975), statutory restrictions on government appeals prior to the amendment of the Criminal Appeals Act in 1971 usually made it unnecessary to determine the constitutional limitations on the Government's right of appeal. The few earlier cases contain little discussion of the applicability of the Double Jeopardy Clause to government

---

**3.** United States v. Banks, 383 F.Supp. 389, 391, 394 (D.S.D.1974).

**4.** The court in its written opinion dismissing the charges stated that a judgment of acquittal would be inappropriate as it was not making an evaluation of the evidence and recognized that "a judgment of dismissal is not the only possible remedy in this situation, i. e. a new trial could be ordered" and then stated its belief "that the misconduct by the government in this case is so aggravated that a dismissal must be entered in the interests of justice." The dismissal was not on the due process ground that because of governmental miscon-

duct the defendants cannot now or in the reasonably foreseeable future receive a fair trial but was bottomed on the court's supervisory powers over the administration of justice to establish and maintain "civilized standards of procedure and evidence," citing McNabb v. United States, 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943).

**5.** U.S. Const. amend. V, which provides in pertinent part, " \* \* \* nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

appeals. However, section 3731, as amended in 1971, was intended to allow government appeals whenever the Constitution would permit, Serfass v. United States, —— U.S. ——, ——, 95 S.Ct. 1055, 1061–1062, 43 L.Ed.2d 265 (1975), and has recently been interpreted in a trilogy of cases in the Supreme Court. Serfass v. United States, *supra*; United States v. Wilson, *supra,* and United States v. Jenkins, —— U.S. ——, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975).

These cases make clear that the determination of whether the Government's appeal in this case is barred upon double jeopardy grounds requires a consideration of the policies underlying the Double Jeopardy Clause that would be implicated by an appeal in the present case. That the principal policy is one disfavoring multiple trials is clear.

> The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. * * * The underlying idea, one that is deeply engrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Green v. United States, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), *quoted in* Serfass v. United States, *supra* at ——, 95 S.Ct. 1055. *Accord,* United States v. Wilson, *supra* at ——, 95 S.Ct. 1013.

However, this policy, although compelling, does not necessarily control the decision in any particular case. It is clear that in certain instances the interests of justice may outweigh the policy of only one trial. As noted in Wade v. Hunter, 336 U.S. 684, 688–89, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949):

The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. * * [A] defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

Thus, the Government argues that in spite of defendants' objections to our jurisdiction to hear this appeal, we should accept jurisdiction due to the public interest in fair trials designed to end in just judgments, contending that it did not receive a fair trial.

While it is a fact that the Government was on trial for alleged misconduct during the greater part of this trial and rather vehemently contends it did not receive a fair trial, certainly neither § 3731 nor the Constitution would allow retrials whenever it could be shown that prejudicial or erroneous rulings were made against the Government. We must approach the question of appealability from the standpoint of the constitutional right of an individual to be free of repetitious trials after jeopardy once attaches, although recognizing the limited exceptions where a retrial does not offend the Double Jeopardy Clause.

The *Hunter* court was not attempting to engraft a new exception to the Double Jeopardy Clause that would create a right of appeal whenever the Government felt it did not receive a fair trial. Rather, it was restating the philosophy underlying a retrial in the traditional situation of a mistrial due to "manifest necessity."

■■ Retrial has been allowed in a number of circumstances determined not violative of the Double Jeopardy Clause. Where a defendant has secured reversal of his conviction on direct appeal, a new trial may be had. *See, e. g.,* Forman v. United States, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed.

300 (1896). The same rule obtains when a defendant successfully mounts a collateral attack upon his conviction. United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

■ Retrials because of a mistrial granted at the defendant's instance, United States v. Tateo, *supra* at 467, 84 S.Ct. 1587, or where required by manifest necessity or when the ends of justice would be defeated, United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824) (hung jury), are not barred by the Double Jeopardy Clause. Indications of circumstances falling within the *Perez* rationale can be found in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961) (mistrial granted in sole interest of defendant);[6] Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (mistrial over defendant's objection granted due to incurably defective indictment); Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949) (military tactical situation justified discontinuance of first trial).

Neither the facts nor the policies expressed in the aforementioned cases apply to the present case. Defendants were not convicted at trial, nor was a mistrial declared. The situation presented herein is a trial which terminated in defendants' favor after jeopardy had attached, before a finding of guilt by the trier of fact, and with no determination by the trial court that due process precludes a retrial or that "manifest necessity" or the ends of justice require a retrial. Further, the court specifically rejected the mistrial alternative. Although our precise question was not answered by the Supreme Court in its recent trilogy,[7] the policies expressed in those opinions require our conclusion that a government appeal in this case would violate the Double Jeopardy Clause of the Constitution.

In United States v. Wilson, *supra*, the district court dismissed the indictment upon grounds of prejudicial preindictment delay after trial had terminated in a jury verdict of guilty. The Court of Appeals dismissed a government appeal. The Supreme Court reversed. It determined that the constitutional protection against double jeopardy attaches only where there is a danger of subjecting the defendant to a second trial for the same offense. Since the district court's dismissal could be reviewed and if reversed would result in the reinstatement of the jury verdict without subjecting defendant to a second trial, the Government was allowed to appeal.

Serfass v. United States, *supra*, involved a pretrial dismissal. The Supreme Court held that labelling the trial court's action an "acquittal" instead of a dismissal was without significance until jeopardy attached,[8] and that there was no bar to a government appeal under § 3731 from a pretrial ruling of a district court when the defendant has not been put in jeopardy.

The language used by the Supreme Court in the third case of the trilogy buttresses our conclusion of nonappealability.

---

**6.** As stated in *Gori, supra* at 368, 81 S.Ct. at 1526:

> Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment. Simmons v. United States, 142 U.S. 148 [12 S.Ct. 171, 35 L.Ed. 968]; Logan v. United States, 144 U.S. 263 [12 S.Ct. 617, 36 L.Ed. 429]; Dreyer v. Illinois, 187 U.S. 71, 85–86 [23 S.Ct. 28, 47 L.Ed. 79].

**7.** The Supreme Court expressly left open our particular question in Serfass v. United States, —— U.S. ——, ——, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265 (1975):

> [W]e of course express no opinion on the question whether a similar ruling [dismissing the indictment] by the District Court after jeopardy had attached would have been appealable.

**8.** Jeopardy attaches when a defendant has been "put to trial before the trier of facts, whether the trier be a jury or a judge." Serfass v. United States, —— U.S. ——, ——, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975).

When a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal.

United States v. Jenkins, —— U.S. ——, ——, 95 S.Ct. 1006, 1011, 43 L.Ed.2d 250 (1975).

While *Jenkins* was a bench trial and the case at bar a jury trial, the relevant facts are substantially identical. In *Jenkins*, after conclusion of the trial but before the court had made a finding of guilty or not guilty, it entered a judgment dismissing the indictment and discharging the defendant. The Supreme Court held the dismissal nonappealable. It indicated that the guiding consideration is whether "further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged would have been required upon reversal and remand." United States v. Jenkins, *supra* at ——, 95 S.Ct. at 1013.

The Government attempts to avoid the applicability of the Double Jeopardy Clause and these decisions by arguing that before the judgment of dismissal was entered a mistrial had occurred by operation of law. This "mistrial by operation of law" theory is implicitly bottomed on the belief that the District Court could do nothing but declare a mistrial when the Government refused to consent to proceed with 11 jurors. The Government's belief, however, is unsupported by the District Court's action, as well as by law. Its mistrial by operation of law concept would do violence to the long-standing principle that the declaration of a mistrial requires a scrupulous exercise of judicial discretion.

The Government urges that since Fed.R. Crim.P. 23(b) requires its consent to proceedings with less than 12 jurors, at the moment it refused to stipulate a mistrial occurred, even though none was declared by the trial court. This argument ignores the long line of cases in which it has been held that the declaration of a mistrial is discretionary with the trial judge. In 1815 Justice Story, sitting as a Circuit Justice, in United States v. Coolidge, 25 Fed.Cas. 622 (No. 14,858) (C.C.D.Mass.1815), approved the withdrawal of a juror, creating a technical mistrial [9] in a situation where the jury could not agree on a verdict. He stated in regard to the practice that "[i]t is now held that the discretion [to declare a mistrial] exists in all cases, but is to be exercised only in very extraordinary and striking circumstances." 25 Fed. Cas. at 623. Nine years later, writing for a unanimous court in United States v. Perez, 22 U.S. (9 Wheat.) 579 (1924), 6 L.Ed. 165, Justice Story stated:

> We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

United States v. Perez, *supra* at 580.

The *Perez* formulation has been consistently approved and adhered to by the Supreme Court. Illinois v. Somerville, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).[10] As the Supreme Court has stated, this formulation:

> This Court has long favored the rule of discretion in the trial judge to declare a mistrial * * * if the ends of justice will be best served. * * * Justice to either or both parties may indicate to the wise discre-

9. *See* 5 Wharton's Criminal Law and Procedure § 2701 (1957).

10. *See also* Brock v. North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 350, 97 L.Ed. 456 (1953):

[A]bjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this court.

Illinois v. Somerville, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973).

The contention advanced by the Government would deny a trial court any discretion in determining whether a mistrial should be declared, in contravention of the clear policy of discretion enunciated in the foregoing cases. Even if we could conceive of a situation in which a mistrial would arise by operation of law, we are convinced that this is not the case. To so hold, we would at the very least have to determine that there were no alternatives to a mistrial once the Government refused to stipulate under Rule 23(b), a finding that would lack foundation in this case. As Judge Nichol recognized, upon the Government's refusal to stipulate, at least two alternatives were presented: he could declare a mistrial or grant the defendants' motion. See United States v. Banks, 383 F.Supp. 389, 393 (D.S.D. 1974). Another possible alternative, delaying completion of the trial until the ill juror was able to resume deliberations, also comes quickly to mind. Since there were alternatives to declaring a mistrial, we cannot say that Judge Nichol lacked the discretion to determine whether a mistrial was "manifestly necessary" in the circumstances.

■ Whether or not Judge Nichol's dismissal of the indictments was correct is not the question before this court, and

we intimate no opinion as to whether the instances of government misconduct specified by Judge Nichol are supported by the record [11] or were severe enough to warrant dismissal. Instead, our question is whether the dismissal is appealable. Since the dismissal terminated the trial in defendants' favor, after jeopardy had attached, and there is no way that a retrial could be avoided in the event of a reversal and remand, we hold that the Government's appeal is barred by the Double Jeopardy Clause and must be dismissed. Cf. United States v. Jaramillo, 510 F.2d 808, 812–13 (8th Cir. 1975).

The statement of the Court in United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971), is applicable here:

> In the absence of such a [mistrial] motion, the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option [to have his trial completed by a particular tribunal] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.

Here, although the Government suggests that jurisdiction should be assumed due to the "public's interest in fair trials designed to end in just judgments," Judge Nichol determined "that the misconduct by the government in this case is so aggravated that a dismissal must be entered in the interests of justice." United States v. Banks, 383 F.Supp. 389, 392 (D.S.D.1974). This conclusion, coming after jeopardy had attached and before verdict, is effectively unreviewable. Cf. United States v. Jorn, 400 U.S. 470, 487–88, 91 S.Ct. 547, 27 L.Ed.2d 543 (Burger, C. J., concurring).

tion of the trial judge that he declare a mistrial * * *. As in all cases involving what is or is not due process * * * no hard and fast rule can be laid down. (Citations omitted.)

11. The record in this case contains over 21,000 pages in 119 volumes of transcript. The Government stated at oral argument that only

some 1700 pages of this were devoted to the issue of defendants' guilt. The implication is that the remainder is devoted to what might be called the trial of the Government, explaining somewhat why the trial of this case lasted over eight months, some five months longer than the actual occupation of Wounded Knee.

We are concerned and ill at ease with the impact that this case has on the administration of criminal justice. Presented with a civil rebellion the Government filed numerous charges; and now, after a protracted 8½ month trial, no definitive result was achieved. And all of this despite substantial expenditures of public funds and a consequent erosion of public confidence in the effective administration of justice.

It is not our function, nor do we intend in this opinion, to attempt to place the blame or apportion fault for the unsatisfactory resolution of this case on the parties, Government, enforcement agencies, or the courts. We appreciate that this was a difficult case for the court to control, and it, no doubt, was beset and harassed by many of the tactics and procedures utilized by both sides. More time was spent trying the witnesses and the counsel than the defendants. That fact alone, regardless of the cause, is not a healthy situation for the administration of justice and the commonwealth.

Any resolution of this case in its present posture will be unsatisfactory to many. The Government feels particularly aggrieved at the charges of prosecutorial misconduct, yet these charges and the court's findings thereon must be left unreached and unresolved on this appeal. The resolution should not even be entirely satisfactory to the defendants. They apparently felt a judgment of acquittal was probable and, if so, they certainly had an interest in having their case heard and disposed of in one trial. The illness of the juror, unfortunate for her, was even more unfortunate for the effective administration of justice, and possibly the defendants, coming when it did. But that uncontrollable event should not have spawned this unsatisfactory denouement.

Applicable to the discharge of defendants herein is the statement of Justice Story, although in a different context, in United States v. Perez, *supra* at 580:

But, after all, [trial judges] have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion rests, in this, as in other cases, upon the responsibility of the judges under their oaths of office.

Appeal dismissed.