**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Cornelius J. KEHOE and Ray K. Bullock, Defendants-Appellees.**

No. 74–2353.

United States Court of Appeals, Fifth Circuit.

July 16, 1975.

Rehearing and Rehearing En Banc Denied Oct. 1, 1975.

Anthony J. P. Farris, U. S. Atty., Henry J. Novak, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellant.

Robert A. Hall, Houston, Tex., for Kehoe.

Richard Haynes, Randy Schaffer, Houston, Tex., for Bullock.

Before BELL, THORNBERRY and GEE, Circuit Judges.

THORNBERRY, Circuit Judge:

Presented for decision in this § 3731 appeal is a question expressly left open by the Supreme Court in its recent double jeopardy trilogy. In Serfass v. United States, 1975, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265, the Court declined to "intimate any view concerning the case put by the Solicitor General, of 'a defendant who is afforded an opportunity to obtain a determination of a legal defense prior to the trial and nevertheless knowingly allows himself to be placed in jeopardy before raising the defense.'" 420 U.S. at 394, 95 S.Ct. at 1065, 43 L.Ed.2d at 277. In this case we conclude, first, that Kehoe and Bullock allowed themselves to be placed in jeopardy for tactical reasons, and second, that because of their decision they are not entitled to claim the protection of the double jeopardy clause. Accordingly, we assume jurisdiction of the appeal and reverse the judgment of the district court.

I.

On January 18, 1973 the grand jury named appellees in an eleven-count indictment charging a number of persons with participation in an alleged loan kickback scheme. On May 14, 1973 a superseding eleven-count indictment was handed down by the grand jury. This indictment, as well as the one that it superseded, alleged violations of 18 U.S.C. § 1006.[1] Also on May 14, however, Kehoe and Bullock alone were charged in a single count indictment with embezzling certain land from a savings association in violation of 18 U.S.C. § 657.[2] Appellees pleaded not guilty to

---

1. Section 1006 renders illegal the making of false entries in the records of, or the mishandling of the property of, certain enumerated federal credit institutions, with the intent to defraud the United States.

2. Section 657 provides:

 Whoever, being an officer, agent or employee of or connected in any capacity with the Reconstruction Finance Corporation,

the embezzlement charge, and on October 29, 1973 a jury was empanelled and trial began. After the government had presented its case-in-chief, appellees moved for a "judgment of acquittal" on the ground, inter alia, that the indictment failed "to charge an offense against the laws of the United States of America since real property cannot be the subject of an embezzlement under the provisions of Title 18, United States Code, Section 657." In a memorandum opinion reviewing the permissible reach of § 657, Judge Bue announced his decision to grant appellees' motion "on the grounds that the indictment failed to state an offense against the United States of America."[3] Shortly thereafter the government procured a new indictment against appellees for the same transaction made the subject of the previous indictment; this time, however, the grand jury charged Kehoe and Bullock with a violation of 18 U.S.C. § 1006. Appellees promptly moved to dismiss this indictment, arguing, inter alia, that Judge Bue had acquitted them in the earlier trial and that a second trial arising out of the same transaction would put them twice in jeopardy. After a hearing, Judge Seals sustained the double jeopardy contention and dismissed the second indictment. The United States now seeks to appeal that ruling.

The government may appeal an adverse judgment in a criminal case only when authorized by statute. United States v. Sanges, 1892, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445. 18 U.S.C. § 3731 provides that:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information . . . except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Here Judge Seals dismissed the second indictment because he felt that after Judge Bue's ruling on the first indictment, the double jeopardy clause barred further prosecution. Hence, our resolution of the double jeopardy issue will control not only the jurisdictional question but the merits as well.[4] With that in mind, we proceed to the main issue on appeal: Does the double jeopardy clause bar the government from further prosecuting Kehoe and Bullock?

---

Federal Deposit Insurance Corporation, National Credit Union Administration, Home Owners' Loan Corporation, Farm Credit Administration, Department of Housing and Urban Development, Federal Crop Insurance Corporation, Farmers' Home Corporation, the Secretary of Agriculture acting through the Farmers' Home Administration, or any land bank, intermediate credit bank, bank for cooperatives or any lending, mortgage, insurance, credit or savings and loan corporation or association authorized or acting under the laws of the United States or any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation or by the Administrator of the National Credit Union Administration, or any small business investment company, and whoever, being a receiver of any such institution, or agent or employee of the receiver, embezzles, abstracts, purloins or willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution, or pledged or otherwise intrusted to its care, shall be fined not more

than $5,000 or imprisoned not more than five years, or both; but if the amount or value embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

3. The correctness of this ruling is not before us.

4. The case is in its present posture because the government, rather than appealing Judge Bue's ruling, chose to reindict appellees under a different statute. Hence, the constitutional double jeopardy question that we would have addressed as a jurisdictional matter had Judge Bue's order been appealed was instead presented to Judge Seals as an argument on the merits for dismissing the second indictment. Nevertheless, even Judge Seals' judgment would not be appealable if "the double jeopardy clause of the United States Constitution prohibits further prosecution" of Kehoe and Bullock. Hence, in this situation the merits and the jurisdictional question merge.

## II.

■ Judge Bue expressly denominated his judgment an acquittal, rather than a dismissal of the indictment. Nevertheless, although "[i]t is, of course, settled that 'a verdict of acquittal . . . is a bar to a subsequent prosecution for the same offense.' . . . [t]he word [acquittal] . . . has no talismanic qualities for purposes of the Double Jeopardy Clause." Serfass v. United States, *supra,* 420 U.S. 392, 95 S.Ct. at 1064, 43 L.Ed.2d at 276. In short, as the Supreme Court noted in a related context, "the trial judge's characterization of his own action cannot control the classification of the action for purposes of our appellate jurisdiction." United States v. Jorn, 1971, 400 U.S. 470, 478 n.7, 91 S.Ct. 547, 553 n.7, 27 L.Ed.2d 543, 552 n.7. It follows that we must examine Judge Bue's ruling and properly characterize it for purposes of the double jeopardy clause.

■ Kehoe and Bullock were of course not acquitted on the general issue by the jury. The primary factfinder made no determination of their guilt or innocence. In certain circumstances, however, the trial judge even in a jury trial may find facts in a manner that will, by a doctrine similar to collateral estoppel, act as an acquittal.[5] Thus, if Judge Bue based his ruling upon facts that went to the general issue of the case, Kehoe and Bullock were in substance, as well as in name, acquitted. The constitutional rule against further prosecution after an acquittal would then come into play to prevent us from assuming jurisdiction.[6]

A reading of Judge Bue's opinion reveals that except perhaps for one brief passage he was clearly discussing only the legal sufficiency of the indictment and not the facts of the case before him. Hence, appellees' argument on this point turns entirely on one ambiguous statement, quoted below:

> This Court was aware of and concerned with the fine distinctions being made when the motion for judgment of acquittal was urged by defendants at the close of the Government's case. Had the evidence shown that the property was sold by and for the benefit of Surety Savings with the defendants in their fiduciary capacities diverting the consideration of such sale for their own benefit, an indictment alleging embezzlement might have been proper. However, the circumstances of this case, accepted as true for purposes of this motion, showed that the alleged consideration never was intended to flow to Surety but only to the defendants. Although the defendants ostensibly deprived Surety Savings of real estate holdings, no funds, credits or securities belonging to Surety were taken. While this distinction is a fine one, it is one that is critical to the offense of embezzlement.

App. at 265. Appellees apparently contend that Judge Bue found that, if other evidence had been introduced, the prosecution could have obtained a conviction under the indictment as it then stood, despite the fact that it alleged embezzlement of real property. The government argues, on the other hand, that this passage was simply a hypothetical situation

---

**5.** United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608; United States v. Jorn, *supra,* 400 U.S. at 478 n.7, 91 S.Ct. at 553 n.7, 27 L.Ed.2d at 552 n.7. *See also* Note, Government Appeals of "Dismissals" in Criminal Cases, 87 Harv.L.Rev. 1822 (1974).

Although the Supreme Court in United States v, Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 read *Sisson* as a statutory rather than a constitutional decision for purposes of reviewability on appeal, *Wilson* noted and apparently approved *Sisson's* suggestion (399 U.S. at 290 & n.18, 90 S.Ct. at 2129 & n.18, 26

L.Ed.2d at 624 & n.18) that the trial judge's ruling in that case posed a constitutional bar to further *trial* proceedings against Sisson. 420 U.S. at 350–351, 95 S.Ct. at 1025–26, 43 L.Ed.2d at 246.

**6.** This case is not like *Sisson* or *Wilson*; reversal on appeal would .mean that appelles' second trial could go forward. Thus, if Judge Bue's judgment was an acquittal, the double jeopardy clause would prohibit further proceedings against Kehoe and Bullock, *see* note 5 *supra,* and we would be required to dismiss the appeal.

posited by the trial judge in which the defendants could properly have been indicted under 18 U.S.C. § 657. We think that the government is essentially correct.

■ First, it is doubtful whether the judge intended to make findings of fact; he clearly states that certain facts will simply be "accepted as true for purposes of this motion." Second, Judge Bue concluded only that "an indictment alleging embezzlement might have been proper," and not that an indictment alleging embezzlement *of land* might be permissible. Therefore, even if he did intend in this passage to make formal findings, the resulting comments were not necessary to the stated ground for granting appellees' motion—i. e., that the indictment in question failed to state an offense—and thus do not constitute findings of fact binding on this court. *Compare* United States v. Esposito, 7 Cir. 1974, 492 F.2d 6, 9, cert. denied 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 760 (1974),[7] *with* United States v. Sorenson, 7 Cir. 1974, 504 F.2d 406; United States v. Jaramillo, 8 Cir. 1975, 510 F.2d 808. In these circumstances Judge Bue's ruling can only be characterized as purely legal—and hence not an acquittal. There was no conclusion on innocence or guilt. Consequently, since the rule forbidding further proceedings after an acquittal is inapplicable here, we must now consider whether the double jeopardy clause prohibits further prosecution of defendants who procure the mid-trial dismissal of the indictment on the ground that it fails to state an offense.

### III.

The recent Supreme Court double jeopardy triology does not supply a direct answer. In United States v. Wilson, 1975, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232, the trial judge dismissed the indictment on speedy trial grounds after a jury had found Wilson guilty of converting union funds to his own use. Relying on United States v. Sisson, *supra*, the Court of Appeals rebuffed the government's attempt to appeal that ruling. The Supreme Court reversed. Justice Marshall carefully reviewed the legislative history of the new § 3731 and concluded that "Congress was determined to avoid creating nonconstitutional bars to the Government's right to appeal." 420 U.S. at 339, 95 S.Ct. at 1019, 43 L.Ed.2d at 239. Proceeding then to an examination of the scope of the double jeopardy clause, the Court isolated "the prohibition against multiple trials as the controlling constitutional principle." 420 U.S. at 346, 95 S.Ct. at 1023, 43 L.Ed.2d at 243. Since in the case before it reversal on appeal would result only in reinstatement of the jury verdict and not in a new trial, the court concluded that the double jeopardy clause would not be offended by permitting the appeal.

■ In United States v. Jenkins, 1975, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250, the defendant was indicted for knowingly refusing to submit to induction into the armed forces. After a bench trial the court "dismissed the indictment" because the Board had—erroneously under then-existing law—refused to entertain Jenkins' "late-ripening" claim to conscientious objector status. The government sought to appeal this ·ruling, claiming that the district judge erred in refusing to give retroactive effect to a Supreme Court decision that legitimated the Board's refusal but which was handed down after Jenkins declined induction. The Court of Appeals dismissed for lack of jurisdiction, and the Supreme Court affirmed. The Second Circuit had characterized the district court's judgment as an acquittal.

---

7. "[I]t is clear from the order that the court concluded that the fatal defect in the prosecution lay in the indictment's failure to state and the statute's failure to require a nexus with interstate commerce which would justify federal regulation. *The fact that the prosecution failed to prove such a connection,* *though alluded to in the order, was of no significance to the actual basis for the decision. The order was neither based upon nor limited in application to the facts of the case. Appeal, therefore, is not barred by the double jeopardy clause of the fifth amendment*" (emphasis added).

The Supreme Court was less sure, and noted the difficulty in bench trials of determining whether a judgment discharging the defendant rested upon factual or legal grounds. Nevertheless, the Court was reasonably certain that the trial judge had not found all factual issues *against* the defendant. Thus, the case before them was not like *Wilson*, where reversal and remand would lead only to reinstatement of a guilty verdict. In deciding that the double jeopardy clause would forbid further proceedings against Jenkins the Court articulated this standard:

> Here there was a judgment discharging the defendant, although we cannot say with assurance whether it was, or was not, a resolution of the factual issues against the Government. But it is enough for purposes of the Double Jeopardy Clause, and therefore for the determination of appealability under 18 U.S.C. § 3731, that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand.

420 U.S. at 369, 95 S.Ct. at 1013, 43 L.Ed.2d at 259. At first glance the broad rule stated here would appear to require dismissal of the present appeal. We have before us a judgment discharging the defendants, and if it is reversed, further proceedings devoted to resolution of factual issues going to the elements of the offense charged will be necessary.[8] Nonetheless, the final case of the double jeopardy trilogy strongly implies that the *Jenkins* standard is not as sweeping as it first appears.

In Serfass v. United States, *supra*, the district court granted the defendant's pre-trial motion to dismiss the indictment on the legal ground that the Selective Service Board had erred in its handling of Serfass's claim to conscientious objector status. The Court of Appeals decided that the government could appeal this order and reversed on the merits. The Supreme Court affirmed, holding that since Serfass had never waived his right to a jury trial, the district judge had made his ruling before Serfass had been placed in jeopardy and hence the double jeopardy clause had no application. Most significant for present purposes, however, the Court reserved two questions not necessary to decision of the case before it: (1) "whether a similar ruling [to the one actually made in *Serfass*] by the district court *after jeopardy had attached* would have been appealable," (emphasis added), and (2) whether appeal would be barred from a mid-trial ruling discharging the defendant on a legal ground that could have been raised by the defendant before trial. 420 U.S. at 394, 95 S.Ct. at 1065, 43 L.Ed.2d at 277–78. The implication that these might be open issues is important, because both hypothetical cases seem to fall directly within the *Jenkins* rule. If a legal bar to further proceedings is raised by the defendant after jeopardy has attached, a judgment sustaining the objection would result in the defendant's discharge, and upon reversal and remand new factual inquiries would perforce be made. Yet the Supreme Court treated the *Serfass* hypotheticals as controversies for another day and not as cases clearly controlled by *Jenkins*. Consequently, it seems likely that the Court intended *Jenkins* to be limited to its facts: a bench trial terminated by a ruling that—since it may have been one in fact—must be treated as an acquittal for purposes of the double jeopardy clause.[9] Thus, none of the recent Supreme Court cases controls here.

■ Accordingly, we must make an independent analysis of whether the double jeopardy clause prohibits further proceedings against appellees. Double jeop-

---

**8.** For purposes of the double jeopardy clause it is of no significance that appellees were originally indicted under 18 U.S.C. § 657 and are now under indictment for violation of 18 U.S.C. § 1006. Both indictments arise out of the same factual setting; all that has changed is the prosecution's legal theory.

**9.** *But see* United States v. Means, 8 Cir. 1975, 513 F.2d 1329.

ardy considerations first come into play when jeopardy attaches; in a jury trial attachment occurs when the jury is empanelled and sworn. Serfass v. United States, *supra*, 420 U.S. at 388, 95 S.Ct. at 1062, 43 L.Ed.2d at 274. In this jury case jeopardy had clearly attached: the trial judge ruled on the indictment at the close of the government's case-in-chief. Nevertheless, "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." Illinois v. Somerville, 1973, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433, quoted in Serfass v. United States, *supra*. *See also* United States v. Sisson, *supra*, 399 U.S. at 303, 90 S.Ct. at 2137, 26 L.Ed.2d at 631; United States v. Pecora, 3 Cir. 1973, 484 F.2d 1289, 1294 n.7; Note, *supra* note 5, at 1836. Of course, once jeopardy has attached, a judgment that either is, or may be, an "acquittal on the merits" bars further proceedings. The Supreme Court has already weighed the various considerations raised in this context and come down on the side of the defendant. United States v. Wilson, *supra*, 420 U.S. at 352, 95 S.Ct. at 1026, 43 L.Ed.2d at 246. We have determined, however, that Judge Bue's ruling in this case was not an acquittal. What we must decide, then, is whether a judgment discharging the defendant after jeopardy has attached on the ground that the indictment is incurably defective poses the same constitutional obstacle to a second trial that is supplied by an actual or an apparent acquittal.

 The Supreme Court case most nearly resembling this one is Illinois v. Somerville, *supra*. In *Somerville* the trial judge had declared a mistrial when the prosecution discovered, after the jury

had been empanelled and sworn but before any testimony had been taken, that the indictment contained an incurable jurisdictional defect. Distinguishing, inter alia, an earlier defective indictment case [10] on the basis that there the first trial had resulted in a verdict of acquittal by the jury, the Court held that "where the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice." 410 U.S. at 471, 93 S.Ct. at 1074, 35 L.Ed.2d at 435. Despite the different terminology used to abort the first trial in *Somerville* and the first trial here, the effect was the same—the dismissal of the indictment and the bringing of a new prosecution—and we believe that the interest-balancing approach employed in that case is also appropriate in this one.[11] *See* United States v. Mayes, 6 Cir. 1975, 512 F.2d 637, 651–52; Comment, Double Jeopardy and Government Appeals of Criminal Dismissals, 52 Texas L.Rev. 303, 342 & n. 180; *cf.* Note, *supra* note 5, at 1838–40.

 Two factors make this case stronger for the defendants than *Somerville*. First, Kehoe and Bullock sat through a full day of trial, at which the prosecution presented its evidence against them. Second, the trial judge termed his decision an acquittal, rather than a mistrial or a dismissal, and the defendants could reasonably have believed that the government was barred from proceeding further against them; the possible psychological shock of being reindicted is not immaterial to tradition-

**10.** United States v. Ball, 1896, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300.

**11.** In United States v. Jenkins, *supra*, the Supreme Court expressly disapproved the reasoning of the dissenting judge in the Court of Appeals, who argued that *Somerville*-type balancing is appropriate even in cases where the defendant has been acquitted: "We disagree with this analysis because we think it is of

critical importance whether the proceedings in the trial court terminate in a mistrial as they did in the *Somerville* line of cases, or in the defendant's favor, as they did here." 420 U.S. at 365 n.7, 95 S.Ct. at 1010 n.7, 43 L.Ed.2d at 256 n.7. Read in context, it seems plain that this language refers only to cases where the defendant was, or may have been, acquitted on the merits. We have already decided that ours is not such a case.

al double jeopardy considerations. What we think controlling for double jeopardy purposes, however, is the manner in which this case is *less* strong for the defendants than *Somerville*. In the latter case the defendant objected strenuously to the termination of the first trial. Here, on the other hand, the defendants themselves challenged the indictment, but only after the jury had been sworn and the government had presented its case-in-chief. At oral argument counsel for appellees stated that he waited to make his "motion for acquittal" because he wanted an opportunity to view the government's evidence. We believe that a defendant who for reasons of trial tactics delays until mid-trial a challenge to the indictment that .could have been made before the trial—and before jeopardy has attached—is not entitled to claim the protection of the double jeopardy clause when his objections to the indictment are sustained.[12] *Cf.* United States v. Serfass, *supra*, 420 U.S. at 394, 95 S.Ct. at 1065, 43 L.Ed.2d at 277–78; United States v. Jenkins, 2 Cir. 1973, 490 F.2d 868, 880. The Senate Report on the bill to amend old § 3731 reveals that Congress believed that the double jeopardy clause would not bar further proceedings in this type of case. S.Rep. No. 91–1296, 91st Cong., 2d Sess., 7, 8–12 (1970). *See also* United States v. Wilson, *supra*. In fact, the old statute's failure to permit a government appeal in cases like this one appears prominently in the Report as a reason for amendment. Under the flexible, interest-balancing approach of Illinois v. Somerville we think that the double jeopardy clause does not forbid further proceedings against appellees; the new § 3731 thus achieves one of its intended purposes. Accordingly, the judgment of the district

court is reversed and the case is remanded for proceedings consistent with this opinion.[13]

Reversed and remanded.

BELL, Circuit Judge (dissenting):

Being of the view that jeopardy attached by virtue of the judgment of acquittal entered in the prior trial of defendants, and that Rule 12(b)(2), F.R. Crim.P., prevents defendants from being barred from claiming double jeopardy because of their delay in challenging the indictment, I would dismiss the government's appeal. I therefore respectfully dissent.

Defendants-appellees Kehoe and Bullock were indicted in 1973 under 18 U.S. C.A. § 657 for the offense of embezzling real property. The case proceeded to trial and at the close of the government's case-in-chief both defendants moved for a judgment of acquittal under Rule 29 F.R.Crim.P. on several grounds, one being that the indictment failed to charge an offense. They argued that real property could not be embezzled and that no case of embezzlement of any property had been established by the government's evidence. The district court granted this motion, agreeing with defendants on both points.

A second indictment was then obtained charging these same defendants with fraudulently receiving the benefits of a federally insured savings association transaction in violation of 18 U.S.C.A. § 1006. This indictment related to the same criminal misconduct alleged in the indictment previously dismissed, and the evidence to have been offered was also the same. Defendants moved to dismiss this second indictment on the grounds that jeopardy had attached in the prior

---

**12.** Fed.R.Crim.P. 12(b)(2) is not violated by this holding. That rule states, in pertinent part: "Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding." Although the rule removes the threat of procedural waiver with regard to jurisdictional defenses, it does not purport to prohibit courts from attaching other unfavorable conse-

quences to the decision to withhold a motion until the middle of the trial.

**13.** There is no merit in appellees' additional contention that the pattern of government behavior toward them constitutes bad faith harassment in violation of the due process clause. *See* United States v. McGough, 5 Cir. 1975, 510 F.2d 598, 603–05.

proceeding. This motion was granted and the government now appeals.

The government contends that the judgment of acquittal in the first proceeding was in fact a dismissal of the indictment for failure to charge an offense. It is argued that the district court did not reach the merits of the case, that there was no verdict in defendants' favor, and that therefore no jeopardy attached. I find no substance in these contentions. It appears that the district court did consider the evidence presented and therefore went beyond the face of the indictment in its ruling.

Recent United States Supreme Court decisions make it clear that principles of double jeopardy bar subsequent represecution once a case has terminated in defendant's favor based upon factual conclusions not found in the indictment but instead upon evidence adduced at trial. United States v. Jenkins, 1974, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250. *See also* Serfass v. United States, 1975, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265; United States v. Wilson, 1975, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232. The first question then is whether the trial court relied on such evidence in its determination. The district court in the second proceeding answered this question in the affirmative and I agree.

The critical language of the court in the first proceeding is as follows:

This Court was aware of and concerned with the fine distinctions being made when the motion for judgment of acquittal was urged by defendants at the close of the Government's case. *Had the evidence shown that the property was sold by and for the benefit of Surety Savings with the defendants in their fiduciary capacities diverting the consideration of such sale for their own benefit, an indictment alleging*

*embezzlement might have been proper.* However, the circumstances of this case, accepted as true for purposes of this motion, showed that the alleged consideration never was intended to flow to Surety but only to the defendants. Although the defendants ostensibly deprived Surety Savings of real estate holdings, no funds, credits or securities belonging to Surety were taken. While this distinction is a fine one, it is one that is critical to the offense of "embezzlement." (Emphasis added)

Thus it appears that the court found that the government had not put on sufficient evidence to sustain a conviction of embezzlement since embezzlement could not be of real property and the government failed to show that any personal property had been taken in the transaction.

*Jenkins, supra,* is controlling where, as here, facts adduced after defendants were put on trial before a trier of facts were considered in dismissing the indictment. 420 U.S. at 369–370, 95 S.Ct. 1006, 43 L.Ed.2d at 259. Jeopardy attaches, according to *Serfass,* when a defendant is put to trial before the trier of the facts. 420 U.S. at 389–393, 95 S.Ct. 1055, 43 L.Ed.2d at 274. This rule, according to *Jenkins,* includes a case where an indictment is dismissed by utilizing facts developed in that trial in connection with the dismissal although the trial did not reach the point of a verdict or judgment. 420 U.S. at 369–370, 95 S.Ct. 1006, 43 L.Ed.2d at 259. Such facts were utilized here.[1]

The opinion prepared by Judge Thornberry, as I perceive it, recognizes that *Jenkins,* without more, would control the disposition of this appeal and require affirmance. *Jenkins* is avoided, however, by deciding and applying the reserved hypothetical of *Serfass,* thus necessitat-

1. In both *Jenkins* and the present appeal, it is unclear whether the district judge terminated the trial based upon factual or legal conclusions. In both cases, however, the judge apparently relied at least in part upon the facts as developed, and thereupon concluded the tri-

al. The court in *Jenkins* held that retrial of the defendant in such a posture would place him twice in jeopardy. I see the posture of the present case as requiring an identical result.

ing a balancing test with the result of estopping defendants from asserting a double jeopardy defense. This approach, in my judgment, misconstrues the reserved question in *Serfass,* decides it incorrectly as construed, and denies a constitutional right because of delay in the face of Rule 12(b)(2).

The issue then is whether defendants are barred from claiming double jeopardy under the circumstances because they could have but did not challenge the indictment until the close of the government's case-in-chief. They could have questioned the indictment before trial by a motion to dismiss for failure to charge an offense under Rule 12(b)(2).[2] The same rule, however, provides that such a failure may be noticed by the court at any time. Defendants chose to wait until the close of the government's case-in-chief to make their motion and the court took notice of it. At that point, the sufficiency of the evidence was drawn into issue with respect to the validity of the indictment.

In *Serfass, supra,* the Supreme Court saved the question of the government being denied a right to appeal by the strategy of a defendant, although afforded an opportunity to do so prior to trial, knowingly allowing himself to be placed in jeopardy before raising a legal defense. 420 U.S. at 394, 95 S.Ct. 1055, 43 L.Ed.2d at 277.[3] It must be remembered that the question being considered was only that of the right of the government to take an appeal under 18 U.S.C.A. § 3731. This statute permits an appeal by the government unless further prosecution is prohibited by the double jeopardy clause. The question saved went only to this and not, as the majority opinion does, to the delay being a bar of a jeopardy defense itself.

Whatever the Supreme Court meant by its reservation of the question, I do not understand it as creating a problem in this case. We have, in effect, entertained the appeal to determine whether we have jurisdiction under 18 U.S.C.A. § 3731. Section 3731 provides that no appeal shall lie where the double jeopardy clause of the Constitution prohibits further prosecution.[4] What the government has in fact appealed is the question whether jeopardy had attached. Thus we are in the position of having to take jurisdiction to determine if the appeal will lie. By way of analogy, *cf.* Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, which teaches that there are cases where jurisdiction must be exercised for the purpose of determining jurisdiction. This is such a case. If we found no error in the district court's conclusion that jeopardy had attached, it would follow that the appeal would be dismissed rather than affirmed. This was the precise procedure followed in *Jenkins, supra,* in the Second Circuit. United States v. Jenkins, 2 Cir., 1973, 490 F.2d 868, 880.

It must be conceded that the reservation in *Serfass* of the deliberate delay question is perplexing. It purportedly goes only to the right of appeal but, as expressed, it could relate also to barring double jeopardy as a defense. In any

---

**2.** Rule 12(b)(2)—Defenses and Objections Which Must Be Raised.

Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

**3.** 18 U.S.C.A. § 3731 provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

**4.** *Cf.* United States v. McGough, 5 Cir., 1975, 510 F.2d 598, 602 n. 2.

event, it is doubtful that the court would treat a constitutional right in such an off-hand fashion.

The Supreme Court has not considered the question whether the delay in attacking an indictment may bar a double jeopardy defense. The law of this circuit is that an indictment may be challenged for the first time on appeal, and after trial and conviction. Walker v. United States, 5 Cir., 1965, 342 F.2d 22, 26. It is also the law in other circuits. United States v. Beard, 3 Cir., 1969, 414 F.2d 1014, 1017; United States v. Bailey, 7 Cir., 1960, 277 F.2d 560, 562.

It is true that the delay was an admitted trial tactic but experienced counsel were taking advantage of what is expressly permitted by Rule 12(b)(2). They wished to see the government's case before they moved to strike the indictment. The trial court could have ruled, but did not, that the motion came too late. It happened that the court (the trier of the facts) considered the facts in its ruling and this gave rise to the double jeopardy claim.

The obtuse problem presented in this appeal is but another example of the labyrinthian state of criminal law, particularly in the trial stages. Although not without some apprehension, I believe that defendants have the better side of the case and I would, therefore, sustain the district court judgment and dismiss the appeal.